NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 10a0189n.06

No. 09-5981

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 25, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,    )
    )
   Plaintiff-Appellee,    )
    )   ON APPEAL FROM THE UNITED
    v.    )   STATES DISTRICT COURT FOR
    )   THE EASTERN DISTRICT OF
    )   KENTUCKY
JAMES A. DECKER,    )
    )
   Defendant-Appellant.    )

BEFORE:  GIBBONS, SUTTON and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Defendant Decker pleaded guilty to embezzling union funds in violation of 29 U.S.C. § 501(c).  He appeals his ten-month sentence and we affirm.

**I**.

From January 2000 until July 2006, Decker served as Treasurer of the Independent Soft Drink Workers Union (Union).  Decker had sole responsibility for reviewing statements and preparing payments for the Union's credit card.  He had a Union credit card to pay for Union-related expenses, but was required to obtain authorization from the Union's president prior to making any purchases.  Decker, however, used the credit card to make numerous personal purchases without authorization.  To hide his misuse of the card, Decker forged the Union president's signature on credit-card payments, destroyed receipts for personal purchases, and used his position to falsify

Union records. Decker did make some attempt at restitution, reimbursing the Union for $5,057.06 in April 2005. Decker recorded the payment as a "dues deposit" in the Union's records.

An audit by the Department of Labor Office of Labor-Management Standards (OLMS) uncovered Decker's embezzlement. The audit revealed 229 questionable purchases made with Decker's Union credit card. In March 2008, Decker met with an OLMS investigator. During a more than two-hour interview, Decker reviewed the suspect charges with the investigator and challenged only two of them as not being wrongful. He admitted his personal use of the Union's card and provided a sworn statement admitting to 227 personal charges.

Decker was indicted on December 11, 2008 for violating 29 U.S.C. § 501(c), which provides that "[a]ny person who embezzles . . . any of the moneys, . . . or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both." Pursuant to the five-year statute of limitations contained in 18 U.S.C. 3282(a), the indictment covered only purchases made between December 11, 2003 and June 23, 2006. On March 19, 2009, Decker pleaded guilty without a plea agreement. He then unsuccessfully attempted to reach an agreement with the government on a stipulated loss amount of less than $10,000,[1] asserting that after his OLMS interview, he rechecked his notes, which he did not have at the interview, and realized that many of the unauthorized charges were for Union, not personal, purposes. Decker could not reach an agreement with the government, however, and the Probation Office prepared a Presentence Investigation Report (PSR) calculating the applicable sentencing range.

---

[1]Under the Guidelines a two-level sentence enhancement applies if the loss amount is greater than $5,000 but less than $10,000, and a four-level enhancement applies if the amount is greater than $10,000 but less than $30,000. U.S.S.G. § 2B1.1(b)(1)(B)-(C).

The base offense level for the embezzlement charge was six. The Probation Office calculated the loss amount by subtracting the amount Decker had reimbursed the accounts from the amount he admitted taking in the interview. This resulted in a loss amount over $10,000,[2] and a four-level enhancement. An additional two-level enhancement was applied under U.S.S.G. § 3B1.3, based on abuse of a position of trust. The PSR deducted two levels for acceptance of responsibility, for a total offense level of ten. Decker had one prior conviction, a 1992 misdemeanor conviction for violating the civil rights of a criminal suspect, placing him in Criminal History Category II. This resulted in a Guidelines range of eight to fourteen months' imprisonment, in Zone C of the Sentencing Table. U.S.S.G. § 5A.

Decker objected to the PSR's loss calculation, and submitted a list of $3,417.54 in charges that he claimed were made for Union purposes. He also challenged the two-level enhancement for abuse of a position of trust and the inclusion of his prior misdemeanor in calculating his criminal history category. Success on any one of these challenges would have placed Decker into Zone B of the Sentencing Table, making him eligible for a sentence of probation rather than a term of imprisonment under the Guidelines. U.S.S.G § 5B1.1. At the sentencing hearing, the district court accepted the PSR-calculated Guidelines range, over Decker's continued objection, and sentenced Decker to ten months' imprisonment. Decker appealed.

**II.**

---

[2]The PSR calculated the loss amount by subtracting the restitution amount, $5,057.06 from the loss amount, $16,695.06. PSR at 4. Factored into the loss calculation, the Probation Office gave Decker credit for $498.23 in charges that were apparently included in Decker's admission, but which former Union president Dennis Dailey said were approved purchases. *Id.* at 17. Due to a mathematical error, the amount was calculated as $11,637.94. *Id.* at 4. As the district court noted at Decker's sentencing hearing, the correct amount was $11,638.00. Sent'g Tr. at 60.

Decker makes four arguments on appeal. First, he argues that the government did not meet its burden at sentencing to establish the loss amount. Second, he claims that the district court erred in its calculation of the loss amount. Third, he contends that the district court erroneously included his prior misdemeanor when calculating his criminal history category. Finally, Decker argues that the court improperly applied the abuse of position of trust enhancement.

## A. Loss Amount

Decker asserts that the government failed to introduce sufficient evidence to support the district court's loss calculation and that the district court employed the wrong standard when calculating the amount of the loss. Under the Guidelines, the district court determines the amount of the loss by a preponderance of the evidence. *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006) (citations omitted). This court reviews the district court's methodology for calculating loss de novo and its factual findings for clear error. *United States v. White*, 492 F.3d 380, 414 (6th Cir. 2007). The methodology used, however, need not result in a precise calculation. U.S.S.G. § 2B1.1(b)(1), Application Note 3(C) states "[t]he court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." We have held that to successfully challenge a district court's loss calculation, a defendant "'must carry the heavy burden of persuading this Court that the evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations.'" *United States v. Hamilton*, 263 F.3d 645, 654 (6th Cir. 2001) (quoting *United States v. Jackson*, 25 F.3d 327, 330

(6th Cir.1994)).[3]

## 1. Sufficiency of the Evidence

At the sentencing hearing, the government bore the burden of proving the loss amount by a preponderance of the evidence. The government presented testimony of Special Agent Mitch Grueninger, the OLMS case agent who interviewed Decker. Grueninger testified that he confronted Decker with evidence of unauthorized use of the Union credit card during a two- to three-hour meeting, and that Decker admitted incurring 227 unauthorized charges for personal use, but specifically challenged two other charges. Sent'g Tr. at 6-9. Grueninger also testified that Decker had no documentation to support the suspect charges. *Id*. at 10. Decker admitted in his testimony that he signed a written statement, under penalty of perjury, acknowledging that the 227 charges were both unauthorized and for personal use. *Id.* at 49. He confirmed that he contested only two of the 229 suspect charges, *id.* at 53, and testified that he admitted to OLMS agents that he destroyed receipts for personal purchases to conceal his embezzlement. *Id.* at 57. This evidence was sufficient to satisfy the government's burden.

## 2. Loss Calculation

Decker further argues that the district court erroneously calculated the loss amount. He contends that the court assumed that all unauthorized charges were in violation of 29 U.S.C. § 501(c), rather than requiring evidence that they were made for Decker's personal use. This argument is without merit. After Grueninger testified, Decker's counsel attempted to rebut the government's evidence through Decker's testimony and the testimony of Dennis Dailey, a former Union president.

---

[3]In *Hamilton* this court stated that the district court was entitled to rely on a loss estimate provided by the defendant's co-conspirator because the co-conspirator "had no incentive to inflate this estimate, because his own sentence . . . was based on this figure." 263 F.3d at 654-55.

Dailey had reviewed a list of Decker's charges for investigators, and marked each purchase A, B or C. A denoted "absolutely" unauthorized charges, or charges definitely for personal use, B denoted unauthorized charges that Dailey could not determine the purpose of, and C denoted authorized charges. Sent'g Tr. 20-21; 28-29. Decker then testified that many of the charges corresponded to legitimate union purchases, even though he did not receive authorization and did not have documentation. *See, e.g., id*. at 36-37.

The district court was thus presented with two different accounts of the suspect charges: Decker's prior admission to OLMS, and his more recent explanation. The court's decision to accept the full amount of the 227 charges, less the amount of restitution and the charges Dailey confirmed to be authorized, was not a matter of methodology, but rather a finding of fact based on credibility. The court found that Decker's testimony at the sentencing hearing was not credible and that Decker "was attempting to contrive an amount that would allow the Court to sentence him . . . lower." *Id.* at 74. It therefore chose to credit his earlier admission and in doing so committed no error.

## B. Criminal History Category

In January 1992, Decker was sentenced to twelve months' imprisonment for "Violating Civil Rights Without Causing Bodily Injury." The conviction stemmed from Decker's hitting a suspect who had been taken into custody following a pursuit while Decker was a police officer in Fort Wright, Kentucky. As a result, Decker was placed in Criminal History Category II. U.S.S.G. §§ 4A1.1, 5.A. Decker objected to the inclusion of the offense, asserting that the conviction was more than ten years prior to the commencement of the charged conduct, and therefore not countable under U.S.S.G § 4A1.2(e)(2). He renews this claim on appeal, and, for the first time, argues that 18 U.S.C. § 3282(a) conflicts with the Guidelines. We review the first, preserved, claim de novo and the

6

second for plain error.[4]

*1. Guidelines*

The Guidelines provide that a sentence of one year and one month or less "imposed within ten years of the defendant's commencement of the instant offense" is counted for determining a defendant's criminal history category under the guidelines. U.S.S.G. § 4A1.2(e)(2). Application Note 8 of the commentary clarifies that "[a]s used in §4A1.2. . .(e), the term 'commencement of the instant offense' includes any relevant conduct." *See also*, *United States v. Gibbs*, 182 F.3d. 408, 446 (6th Cir. 1999) ("The district court may consider any relevant conduct in determining the 'commencement of the instant offense' for purposes of computing enhancements for criminal history") (citing U.S.S.G. § 4A1.2 commentary, applic. note 8).

This court has held that "relevant conduct is not limited to conduct for which the defendant has been convicted," *United States v. Maken*, 510 F.3d 654, 658 (6th Cir. 2007) (citing *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994)), and specifically that "conduct that cannot be prosecuted under the applicable statute of limitations can be used to determine relevant conduct," *Pierce*, 17 F.3d at 150;[5] *accord United States v. Griffith*, 584 F.3d 1004, 1013 & n.7 (10th Cir. 2009) (noting

---

[4]Arguments not raised before the district court are generally waived. However, we may consider such arguments "to address plain errors or defects affecting substantial rights, especially where, as here, the argument has been fully briefed and involves a purely legal issue." *United States v. Wimbley*, 553 F.3d 455, 460 (6th Cir. 2009) (citations omitted).

[5]Decker argues that *United States v. Shafer*, 199 F.3d 826 (6th Cir. 1999) conflicts with *Pierce* and controls in this case. He is mistaken. In *Shafer*, this court differentiated between "conduct that does not lead to a criminal conviction for technical reasons, such as . . . criminal conduct for which the statute of limitations has expired, and conduct that could never lead to a criminal conviction because the conduct is not of a criminal nature." *Id.* at 830. We held that legal conduct cannot be relevant conduct in the context of a district court's U.S.S.G. § 1B1.3(a)(2) sentencing calculation. *Id.* at 831. The decision, however, endorsed the holding of *Pierce* in so far as it relates to the use of conduct excluded by the statute of limitations. 199 F.3d at 830 ("Our cases

that "[n]ine other circuits have reached the same conclusion regarding statutes of limitations and relevant conduct."). Because the relevant conduct here commenced within ten years of the prior sentence, the district court correctly determined that Decker's prior offense was countable in calculating his criminal history category.

*2. Statute of Limitations*

Decker argues for the first time on appeal that 18 U.S.C. § 3282(a) is in conflict with the Guidelines and prohibits the use of relevant conduct that cannot be charged to enhance his sentence. The statute of limitations states that, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Decker claims that by using relevant conduct from 2000 to apply a greater Criminal History Category, he is being punished for an offense not charged within five years.

The Supreme Court has held that "where the legislature has authorized . . . a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction for the purposes of the double jeopardy inquiry." *Witte v. United States*, 515 U.S. 389, 403-04 (1995); *see also United States v. Williams*, 217 F.3d 751, 754 (9th Cir. 2000) (applying *Witte* to a challenge based on the statute of limitations). Because Decker's sentence is well within the punishment range authorized by 29 U.S.C. § 501(c),[6] the inclusion of his prior

have interpreted the relevant conduct provision of § 1B1.3(a)(2) to include conduct of a criminal nature for which a defendant could not otherwise be held criminally liable." (citing *Pierce*, 17 F.3d at 150).

[6]Decker does not argue that "the range fixed by Congress is so broad, and the enhancing role played by the relevant conduct so significant, that consideration of that conduct in sentencing has become 'a tail which wags the dog of the substantive offense.'" *Witte*, 515 U.S. at 403 (quoting

offense was proper, as was the district court's consideration of relevant conduct committed more than five years before the indictment. Thus, the district court committed no error, plain or otherwise.

## C. Abuse of Position of Trust

Lastly, Decker challenges a two-level enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3, which states, in relevant part:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

Application Note 5(B) addresses theft or embezzlement from a labor union. It states:

> If the offense involved theft or embezzlement from a labor union and the defendant was a union officer or occupied a position of trust in the union (as set forth in 29 U.S.C. § 501(a)), an adjustment under this section for an abuse of a position of trust will apply.

Decker argues that he was not in a position of trust because he did not have "discretion" in his employment. *See United States v. Tatum*, 518 F.3d 369, 374 (6th Cir. 2008). He claims that because he was not authorized to use the credit card without the Union president's approval, he was not given discretion in his use of the card. We disagree. Decker was in a position of trust based on his position as Treasurer of the Union. *See* 29 U.S.C. § 501(a) ("The officers . . . of a labor organization occupy positions of trust in relation to such organization and its members as a group."). Decker had access to the credit card because of his position. He also had discretion in preparing financial reports for the Union, which he used to hide his misconduct.

Decker further claims that the sentence enhancement amounts to "double-counting" because § 501(c) was enacted to protect the Union from embezzlement by its officers, and there is a high

---

*McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)).

likelihood that any person in a position to commit the offense would also be in a position of trust. Decker concedes that § 501(c) applies to persons other than Union officers, but asserts that a non-officer would be prosecuted under a general criminal statute. This is irrelevant. Decker was prosecuted under a statute that applies to all employees of a labor union, without regard to whether the person occupies a position of trust. The enhancement applies where the embezzling officer or employee also holds and abuses a position of trust or uses a special skill. There is no double counting and the enhancement was proper.[7]

## III.

For the foregoing reasons, we **AFFIRM**.

---

[7]In an unpublished decision, this court rejected the same "double counting" argument before the addition to U.S.S.G. § 3B1.3 of Application Note 5, quoted, in part, *supra*. *See United States v. Reid,* 14 F.3d 603 (6th Cir. 1993) (table decision). The Application Note confirms that this decision was sound.