RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0250p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DOUGLAS A. DYER (17-6174); JAMES H. BRENNAN, III, (17-6177)

*Defendants-Appellants*.

Nos. 17-6174/6177

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:17-cr-00053—Travis R. McDonough, District Judge.

Argued: October 4, 2018

Decided and Filed: November 13, 2018

Before: SUHRHEINRICH, MOORE, and BUSH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mark E. Brown, MENEFEE & BROWN, P.C., Knoxville, Tennessee, for Appellant in 17-6174. Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant in 17-6177. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Mark E. Brown, MENEFEE & BROWN, P.C., Knoxville, Tennessee, for Appellant in 17-6174. Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant in 17-6177. James T. Brooks, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.  The Double Jeopardy Clause of the Fifth Amendment protects against multiple criminal prosecutions and punishments for the same offense.  Recently, the Supreme Court held that "[d]isgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty under [28 U.S.C.] § 2462."  *Kokesh v. SEC*, 137 S. Ct. 1635, 1645 (2017).  In this criminal sentencing appeal, we must consider whether SEC civil disgorgement is now a criminal punishment after *Kokesh*.  It is not, so we **AFFIRM** Defendants' sentences.

**I.**

**A.  Facts**

From 2008 to 2016, James H. Brennan and Douglas A. Dyer (collectively, "Defendants") owned and managed Broad Street Ventures, LLC ("Broad Street").  Brennan and Dyer had a claimed goal of using Broad Street to create and incorporate eight Tennessee corporations that would be known as Scenic City F-10, I–VIII (collectively, "Scenic City").  They induced investment in Scenic City by claiming that once Scenic City was appropriately capitalized, Brennan and Dyer would register the common stock of Scenic City with the SEC by filing a Form 10.  They promised to publicly trade Scenic City and use Scenic City to acquire small private businesses.  This process is known as a reverse merger and is legal.

Investors sent Brennan and Dyer money by mail and electronic wire from locations outside of Tennessee.  As money came in, however, Brennan and Dyer did not invest it into Scenic City.  Instead, they moved the funds through Broad Street's bank accounts and diverted a significant portion of that money to their own personal bank accounts.  To fool the investors, Brennan and Dyer issued stock certificates to create the perception that they had handled the investment funds appropriately.  Brennan and Dyer mailed these stock certificates to the investors via the United States Postal Service.  Yet Brennan and Dyer never filed a Form 10 with the SEC and never completed any reverse mergers.  In total, the Government estimated that investors lost $4,942,070.18 in Brennan and Dyer's scheme.

Brennan and Dyer reported the embezzled funds they received through Broad Street as long-term capital gains, which substantially reduced their personal tax liability each year by capping the tax rate at 15%.  The embezzled funds should have been reported as ordinary income subject to a significantly higher tax rate.  Brennan and Dyer also made payments to themselves from Broad Street that they treated as nontaxable distributions.  These payments made up Brennan and Dyer's primary source of income for the relevant years.  In summary, Brennan and Dyer funneled the embezzled funds through Broad Street, paid out those funds to themselves as nontaxable distributions, and underreported their income to evade paying taxes on it.  For the years 2010 through 2014, Dyer owed an additional $312,799 in taxes and Brennan owed an additional $164,542.

## B.  Procedural History

### 1.  SEC Civil Case Begins

On July 20, 2016, the SEC began a civil enforcement suit against Brennan and Dyer (the "Civil Case").  The SEC alleged that Brennan and Dyer had committed securities fraud in violation of 15 U.S.C. §§ 77(q)(a)(1), 77(q)(a)(2), 77(q)(a)(3), and 78j(b), and Rule 10b-5 of the Securities Exchange Act (17 C.F.R. § 240.10b-5).  Less than a week later, Brennan and Dyer consented to a preliminary injunction freezing their assets and enjoining further securities law violations.

### 2.  Criminal Case Begins and Defendants Plead Guilty

Nine months later, on April 10, 2017, the Government filed an information charging Defendants with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 371 and 1341 and tax evasion in violation of 26 U.S.C § 7201 (the "Criminal Case").  Dyer was also charged with criminal contempt in violation of 18 U.S.C. § 401(3).[1]  On May 3, 2017, Defendants pleaded guilty to the conspiracy to commit wire fraud and mail fraud and tax evasion

---

[1]The contempt plea is not at issue in this appeal.  Dyer was enjoined from transferring assets pending the outcome of *Securities and Exchange Commission v. Brennan, et al*, 1:16-cv-00307 (E.D. Tenn.).  Dyer brokered a deal to allow restricted stock belonging to another company, Fision, to be merged with Scenic City F-10 VII.  Dyer issued this stock in the name of victim investors in the Scenic City scheme.  For this, he pleaded guilty to contempt.

charges.  Dyer also pleaded guilty to the additional count of contempt of court.  As part of their plea agreements, Brennan agreed to pay $184,022.84 in restitution to the Internal Revenue Service, and Dyer agreed to pay $354,251.58.  Brennan and Dyer stipulated that the amount of loss caused by their conduct was greater than $3,500,000 and waived any double jeopardy defenses to the prosecution.

### 3.  Defendants Consent to Final Judgment in Civil Case

On May 10, 2017—one week after pleading guilty in the Criminal Case—Brennan and Dyer consented to entry of a final judgment in the Civil Case to enjoin them from violating 15 U.S.C. § 78j(b), Rule 10b-5 (17 C.F.R. § 240.10b-5) and 15 U.S.C. § 77q(a).  They also agreed that the court would order disgorgement of ill-gotten gains, pre-judgment interest, and a civil penalty according to 15 U.S.C. § 77t(d) and § 78u(d)(3).  The court left open the amount of disgorgement and civil penalty pending a motion by the SEC.  As part of the consent judgment, Defendants "waive[d] any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein."[2]  The court entered the final judgment in the Civil Case into the record on August 1, 2017.

### 4.  Criminal Sentencing and Objections

In the Criminal Case, the Presentence Investigation Report ("PSR") applied the Sentencing Guidelines and gave both Defendants a base level of six under USSG § 2B1.1(a)(2).  Because the amount of loss exceeded $3,500,000, eighteen levels were added under § 2B1.1(b)(1)(J).  Two additional levels were added under § 2B1.1(b)(2)(A) because the offense involved approximately 200 victims.  Three levels were subtracted from both Defendants because they accepted responsibility for the crimes in their plea agreements.  Dyer had an additional two points added for his contempt of court pursuant to § 2B1.1(b)(9)(C).  The final tally set Brennan's offense level as 23 and Dyer's as 25.  Since neither Defendant had a criminal history score, each received a criminal history category of I.  This produced a Guidelines range

---

[2]Although the Government raised the waiver issue in the district court, it has not pursued it on appeal. Therefore, the Government forfeited its waiver argument, and we need not consider it.  *See Osborn v. Griffin*, 865 F.3d 417, 450 (6th Cir. 2017) ("Ordinarily, we limit our consideration to the issues that the parties properly preserve and put before us." (citation omitted)).

for Brennan of 46 to 57 months' imprisonment and for Dyer of 57 to 71 months of imprisonment.

Defendants objected to the PSR calculations based on the Supreme Court's unanimous decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). Decided on June 5, 2017, *Kokesh* held that in SEC enforcement proceedings, disgorgement is a "penalty" subject to the five-year statute of limitations in 28 U.S.C. § 2462. *Kokesh*, 137 S. Ct. at 1645. According to Defendants, the 18-level increase of their base offense level violated the Double Jeopardy Clause because Defendants were already punished by disgorgement in the Civil Case. Dyer also argued that the five-year statute of limitations from *Kokesh* prevented the court from considering conduct that happened more than five years before he was indicted. Finally, Brennan argued for a downward variance based on his status as a first offender.

The district court held a sentencing hearing in the Criminal Case on September 29, 2017 and adopted the recommendations from the PSR. The court denied each objection from Defendants. The court ruled that *Kokesh* did not apply to Defendants' Double Jeopardy claims, that the court was allowed to consider "relevant conduct" that could not be prosecuted separately because of the statute of limitations, and that Brennan did not qualify as a first offender given his previous censure by the Financial Industry Regulatory Authority ("FINRA"). The court then analyzed the 18 U.S.C. § 3553(a) factors and sentenced Brennan to 48 months and Dyer to 60 months. The court also ordered Brennan and Dyer to pay restitution in the full amount of loss, $4,942,070.18. Brennan and Dyer were ordered to pay additional amounts of $184,022.84 and $354,251.58, respectively, to the IRS for their tax evasion.

### 5. Civil Case Disgorgement

On January 30, 2018, the SEC moved for disgorgement in the Civil Case. Two weeks later, the court entered an order of disgorgement against Brennan and Dyer, jointly and severally, in the amount of $4,942,070.18, to be offset by the amount of restitution ordered to be paid in the Criminal Case.

**II.**

Defendants now appeal their criminal sentences, principally claiming the disgorgement violates the Double Jeopardy Clause under *Kokesh*. Dyer also appeals the eighteen-level enhancement on collateral estoppel and statute of limitations grounds. Brennan also appeals the district court's decision not to grant a downward variance based on his first-offender status. We have jurisdiction over the appeal of criminal sentences pursuant to 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291.

**III.**

**A. Double Jeopardy**

The Double Jeopardy Clause states: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. Criminal defendants are thus protected from "multiple punishments for the same offense." *United States v. Ehle*, 640 F.3d 689, 694 (6th Cir. 2011) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). When reviewing the district court's calculation of the Guidelines, including sentencing enhancements, we review its factual findings for clear error and its legal conclusions de novo, and we give "due deference" to the district court's determination that an enhancement applies in a particular factual scenario. *United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011) (citations omitted).

In *Kokesh*, the Supreme Court held that SEC disgorgement is a "penalty" subject to the five-year statute of limitations in 28 U.S.C. § 2462. *Kokesh*, 137 S. Ct. at 1645. The Court reached this conclusion for three main reasons. First, SEC disgorgement is imposed for a violation of public laws. *Id.* at 1643. Therefore, the remedy is designed to protect the public at large, rather than any one individual injured party. *Id.* "Second, SEC disgorgement is imposed for punitive purposes": it has a deterrent effect, and since "deterrence [is] not [a] legitimate nonpunitive governmental objective[e]," disgorgement must be punitive. *Id.* (alterations in original) (citations omitted). Third, disgorgement is not compensatory because courts are not required to distribute the funds to the victims. *Id.* at 1644.

It is important to recognize what the Court *did not* say in *Kokesh*. The Court did not say that SEC civil disgorgement is a criminal punishment. Nor did it say anything about Double Jeopardy. Defendants ask us to read between the lines in the *Kokesh* opinion. They assert it should be read broadly to mean that every "penalty" is a "punishment," and in turn that every "punishment" necessarily implicates the Double Jeopardy Clause. This is based on the general language from *Kokesh* defining "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Id.* at 1642 (alteration in original) (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)). But even if a civil penalty is a punishment, the Double Jeopardy Clause still allows the successive imposition of some "sanctions that could . . . be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (citation omitted). Rather, only multiple *criminal* punishments are prohibited. *Id.* And apart from a single mention of the word "crime," nothing in *Kokesh* suggests that the Court considered SEC disgorgement to be a criminal punishment. *Kokesh*, 137 S. Ct. at 1642 (quoting *Huntington*, 146 U.S. at 667). Therefore, Defendants' broad reading seems improper, especially considering that just four years earlier the Supreme Court analyzed the exact same statute of limitations at issue in *Kokesh*—28 U.S.C. § 2462—as the "general statute of limitations for civil penalty actions." *Gabelli v. SEC*, 568 U.S. 442, 444 (2013).

Even so, Defendants urge us to apply the two-part test for determining whether a penalty is criminal punishment explained in *Ward v. United States*, 448 U.S. 242 (1980) and *Hudson v. United States*, 522 U.S. 93 (1997). But applying this test reveals that SEC disgorgement is not a criminal punishment. Under that test, we ask first whether the legislature "indicated either expressly or impliedly a preference" for the punishment to be labeled civil or criminal. *Hudson*, 522 U.S. at 99 (quoting *Ward*, 448 U.S. at 248). Second, even if Congress has indicated a preference for a civil penalty, we ask "whether the statutory scheme was so punitive either in purpose or effect" as to negate that intention and "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.* (alteration in original) (citations omitted).

As to the first question, Congress expressly established a preference for disgorgement to be a civil remedy. When Congress juxtaposes civil and criminal penalties within the same statute, the distinction gives "added significance" to Congress's choice of the "civil penalty"

label. *Ward*, 448 U.S. at 249. Here, Defendants consented to final judgment in the Civil Case, enjoining them from violations of 15 U.S.C. §§ 78j(b) and 77q(a) and of Rule 10b-5. For the § 78j(b) violation, the court ordered disgorgement pursuant to 15 U.S.C. § 78u(d)(3), which grants the district court jurisdiction to impose "a civil penalty." Another section, § 78ff(a), outlines criminal penalties of fines and imprisonment for violations of § 78j(b) (and of "any [other] provision of this chapter" (governing securities exchanges) aside from § 78dd-1). For the § 77q(a) violations, the court referenced § 77t, which distinguishes between civil and criminal penalties.[3] A separate section, § 77x, also authorizes criminal penalties for violations of "this subchapter" (governing domestic securities). These labels and the separation of civil and criminal penalties indicate that Congress intended SEC disgorgement to be civil in nature.

Turning to the second question, we cannot override congressional intent to establish a civil remedy unless we have the "clearest proof" that the penalty is criminal in nature. *Hudson*, 522 U.S. at 100 (citation omitted). *Hudson* lists seven factors to consider:

> (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963) (alteration in original) (internal quotation marks omitted). This list is "neither exhaustive nor dispositive," *Ward*, 448 U.S. at 249, and the factors apply only "to the statute on its face," *Hudson*, 522 U.S. at 100 (citation omitted).[4]

---

[3]For example, § 77t(b) distinguishes between a civil action for injunction and a criminal prosecution. Section 77t(d) authorizes monetary penalties in civil actions, and § 77t(e) gives district courts authority, in either civil or criminal proceedings, to prohibit any person who violates § 77q(a)(1) from acting as an officer or director of an issuer that has a class of securities registered under the statute.

[4]Although the analysis applies to the statute on its face, we note that even under the statute as applied here Defendants were not actually impacted by the disgorgement order. To put it bluntly, Defendants stole nearly $5 million from approximately 200 victims. They must give that money back. The disgorgement at issue here does just that. And it was offset by the amount of restitution in the Criminal Case, so Defendants are not somehow

Although this Circuit has not ruled on the issue, at least five other Circuits have determined that SEC disgorgement is not a criminal penalty for Double Jeopardy purposes.[5] The Second Circuit's analysis of the *Hudson* factors and conclusion that disgorgement is not a criminal penalty are persuasive, and we adopt them here. *See SEC v. Palmisano*, 135 F.3d 860, 865–66 (2d Cir. 1998). The Second Circuit recognized that disgorgement shares traits common to criminal laws, such as the scienter requirement and deterrent effect. *Id.* at 866. Further, disgorgement applies "to conduct that may also be prosecuted" criminally. *Id.* However, disgorgement is not "an affirmative disability or restraint." *Id.* (citation and internal quotation marks omitted). And there are "clear rational purpose[s]" for disgorgement other than punishment, including ensuring that defendants do not profit from their illegal acts, "encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry." *Id.* When assessing those factors in the context of Congress's decision to allow both civil and criminal penalties for securities law violations, "there is little indication, and certainly not the 'clearest proof' . . . that disgorgement . . . [is a] criminal punishment[]." *Id.* (quoting *Hudson*, 522 U.S. at 100).

Defendants do not dispute the weight of authority from other Circuits. Instead, they assert that *Kokesh* changed the analysis. *Kokesh* describes disgorgement as a penalty imposed for punitive, deterrent purposes because the defendant violated a public law. *Kokesh*, 137 S. Ct. at 1643–44. Defendants argue that disgorgement is a penalty that will "promote the traditional aims of punishment—retribution and deterrence." But the courts that have declared SEC disgorgement to be civil have already characterized it as a deterrent. *See, e.g.*, *Palmisano*, 135 F.3d at 866 ("[D]isgorgement . . . possess[es] some characteristics common to criminal laws, such as . . . effecting deterrence . . . ."); *United States v. Gartner*, 93 F.3d 633, 635 (9th Cir. 1996) ("An obvious deterrent purpose, however, while lending support to the argument that the penalty constitutes punishment, does not automatically convert the penalty into 'punishment.'"

---

paying back more than what they stole. At oral argument, Defendants' counsel conceded that, had restitution in an amount equal to the total Defendants have been ordered to pay in both cases been ordered in the Criminal Case alone, there would not be a Double Jeopardy issue.

[5]*See, e.g.*, *United States v. Van Waeyenberghe*, 481 F.3d 951, 956–59 (7th. Cir. 2007); *United States v. Perry*, 152 F.3d 900, 904 (8th Cir. 1998); *SEC v. Palmisano*, 135 F.3d 860, 865–66 (2d Cir. 1998); *United States v. Gartner*, 93 F.3d 633, 635 (9th Cir. 1996); *SEC v. Bilzerian*, 29 F.3d 689, 696 (D.C. Cir. 1994).

(citation omitted)). And the "mere presence of [a deterrent] purpose" does not make a sanction criminal for Double Jeopardy purposes. *Hudson*, 522 U.S. at 105 (citations omitted). To hold it does "would severely undermine the Government's ability to engage in effective regulation of institutions such as banks." *Id.* Thus, the statement in *Kokesh* that disgorgement is a "penalty" is not a game changer.

The holding in *Kokesh* was narrow and limited solely to the statute of limitations in 28 U.S.C. § 2462. Nothing from *Kokesh* serves as the "clearest proof" we require to transform a civil remedy into a criminal punishment for Double Jeopardy purposes. If anything, *Kokesh* reinforces the long-held understanding that SEC disgorgement is civil in nature.**[6]** Accordingly, Defendants' Double Jeopardy claim fails.

Even if SEC disgorgement were a criminal punishment, we would affirm Defendants' sentences for two additional reasons. First, in the Civil Case, the complaint alleged securities violations, so the SEC had to prove that the purchase or sale of a security was involved. *See* 15 U.S.C. §§ 78j(b), 77q(a). In the Criminal Case, the information charged Defendants with conspiracy, so the Government had to prove Defendants joined in an agreement. *See* 18 U.S.C. §§ 371, 1341. These elements are exclusive to the Civil and Criminal Cases, respectively. Under the test from *Blockburger v. United States*, this is not Double Jeopardy. 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (citation omitted)); *see also Ehle*, 640 F.3d at 694.

Second, in this case, the consideration of relevant conduct resulting in an eighteen-level enhancement is not "punishment" for Double Jeopardy purposes. *See United States v. Watts*, 519 U.S. 148, 154–56 (1997) (holding that a sentencing court could consider relevant conduct of which defendant had been previously acquitted for sentencing purposes); *Witte v. United States*,

---

**[6]**While the disgorgement order was tailored directly to the order of restitution in the Criminal Case, one can certainly imagine a scenario where the SEC does not offset the civil disgorgement by the amount of criminal restitution. Although this would still not open the door for a Double Jeopardy claim, it could raise an Excessive Fines Clause issue if the penalties were "grossly disproportional to the gravity of [the hypothetical] defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

515 U.S. 389, 403–04 (1995) (holding that a sentencing court could, consistent with the Double Jeopardy Clause, consider uncharged cocaine importation in imposing a sentence for marijuana offenses that was within the statutory range, without precluding the defendant's subsequent prosecution for the cocaine offense); *United States v. Mack*, 938 F.2d 678, 681 (6th Cir. 1991) ("An enhanced sentence because of a prior conviction is no more double jeopardy than is a consideration of other relevant conduct, including the likelihood of a subsequent conviction."). The district court properly considered Defendants' relevant conduct and applied a sentence enhancement.

### B.  Collateral Estoppel

For the first time on appeal, Dyer raises a collateral estoppel claim.  Because the collateral estoppel claim was not raised below, the district court's decision  must be reviewed for plain error.  Fed. R. Crim. P. 52(b).  Under plain error review, Dyer must show that the court committed "(1) error, (2) that is plain, and (3) that affect[s] substantial rights."  *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (alteration in original) (citation and internal quotation marks omitted).  If all three prongs are satisfied, we may use our discretion to take note of the forfeited error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* at 467 (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Dyer appears to argue that the courts in the Criminal and Civil Cases could not both find him responsible for the lost $4,942,070.18.  Issue preclusion—which Dyer calls collateral estoppel—means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 (2016) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).  In plainer terms, the parties cannot attempt to litigate the same issue in two different proceedings to different results under the same burden of proof.  *See Ashe*, 397 U.S. at 446.

The amount of loss did not change from the Civil Case to the Criminal Case, so there was no error, plain or otherwise, by the district court.  The court in the Criminal Case set the amount

of loss at $4,942,070.18 and ordered restitution in that amount. In the Civil Case, the court ordered disgorgement of $4,942,070.18 on February 15, 2018, four months after Dyer was criminally sentenced. It makes no sense to argue issue preclusion based on the later decision in the Civil Case. In any event, the courts reached the same result. Dyer fails to explain why this was an error, especially considering that Dyer stipulated that the amount of loss was greater than $3,500,000. Under USSG § 2B1.1(b)(1)(J), an 18-level increase is applied when the amount of loss or fraud exceeds $3,500,000. The amount of loss in both the Criminal and Civil Cases easily surpasses that threshold. Even an error of over $1,000,000 by the court in the Criminal Case when calculating the amount of loss would not have affected the 18-level increase.

### C. Statute of Limitations

Dyer again raises a statute of limitations objection, which the district court overruled at sentencing. Defendants' scheme lasted 8 years, from 2008 to 2016. However, in *Kokesh*, the Supreme Court held that the five-year statute of limitations from 28 U.S.C. § 2462 applies when the SEC seeks disgorgement. 137 S. Ct. at 1645. Dyer argues that this five-year statute of limitations also applies to the court's consideration of the total amount of loss or fraud for criminal sentencing purposes under § 2B1.1(b)(1)(J). In essence, because Dyer pleaded guilty on May 3, 2017, he argues that § 2462 barred the court from considering any losses that occurred prior to May 3, 2012. According to Dyer, considering only losses that occurred after that date would reduce the amount of loss below $3,500,000 and alter his Guidelines calculation.

However, it is a settled point of law in this circuit that the district court could consider the full amount of loss as relevant conduct for sentencing purposes, regardless of the statute of limitations. *See United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994). "[C]onduct that cannot be prosecuted under the applicable statute of limitations can be used to determine relevant conduct" for sentencing purposes. *Id.* (citing *United States v. August*, 984 F.2d 705, 713 (6th Cir. 1992); *United States v. Moreno*, 933 F.2d 362, 374 (6th Cir. 1991); *United States v. Lokey*, 945 F.2d 825, 840 (5th Cir. 1991)). Here, the district court even mentioned *Pierce* by name at sentencing.

A recent case provides a clear illustration.  In *United States v. Decker*, the defendant embezzled funds from January 2000 until July 2006.  370 F. App'x 671, 673 (6th Cir. 2010).  "An audit by the Department of Labor Office of Labor-Management Standards . . . uncovered the embezzlement," and "Decker was indicted on December 11, 2008 for violating 29 U.S.C. § 501(c) . . . ."  *Id.*  Because 18 U.S.C. § 3282(a) had a five-year statute of limitations, Decker was indicted for only the conduct between December 11, 2003 and June 23, 2006.  *Id.*  However, his sentence was calculated using the full loss amount from conduct dating to January 2000, less restitution he had made.  *Id.* at 675.  Decker challenged the calculation, arguing that the statute of limitations barred the court from considering any loss prior to December 11, 2003.  *Id.* at 676.  This Court affirmed the sentence because relevant conduct under the sentencing guidelines "is not limited to conduct for which the defendant has been convicted . . . ."  *Id.* (citation omitted).  The *Decker* court concluded that since Decker's sentence was within the range authorized by 29 U.S.C. § 501(c), the district court's consideration of relevant conduct committed more than five years before the indictment was not plain error.  *Id.*

The facts of this case are functionally equivalent to *Decker*.  Brennan and Dyer operated a scheme for more than eight years and the amount of loss or fraud from that scheme was $4,942,070.18.  The district court considered the full amount at criminal sentencing when it imposed the 18-level enhancement under the Guidelines.  As our precedent makes clear, there was no clear error in the district court's decision to do so.

**D.  Procedural Reasonableness of Brennan's Sentence**

The last issue in this appeal is Brennan's challenge to the procedural reasonableness of his sentence.  Brennan requested a downward variance in his Guidelines calculation because he is a "first offender."  The district court denied his request.

We review the procedural reasonableness of a sentence for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir.

2007).**[7]**  A district court commits procedural error when it "fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence . . . ."  *Gall*, 552 U.S. at 51; *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018).  The sentence should reflect the § 3553(a) factors, *United States v. Gahan*, 678 F. App'x 275, 279 (6th Cir. 2017), but the district court's reasoning does not need to address every single concern; instead, the record may sufficiently imply the considerations, *United States v. Moore*, 654 F. App'x 705, 711 (6th Cir. 2016).  We may presume that a sentence within the Guidelines range is reasonable.  *Peugh v. United States*, 569 U.S. 530, 537 (2013) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)).

In his motion for a downward variance, Brennan asserted that he should receive a one-level reduction in sentencing because of his "first offender" status.  He cited a set of proposed amendments from the Sentencing Commission and a recidivism study that suggests first-time offenders are less likely to be deterred by longer prison sentences and present the lowest risk of recidivism.**[8]**  At sentencing, the Government presented evidence that Brennan and Dyer had each been censured by FINRA in 1999, barred from association with any National Association of Securities Dealers member in any capacity, and fined $10,000.  The court rejected Brennan's request, stating:

> I agree there's no question there's no criminal history, but there is history of—I won't say comparable conduct, but certainly conduct that people in Mr. Brennan's and Mr. Dyer's positions shouldn't engage in; namely, this—it was a few years before this scheme at issue today started, but they were—I think they were fined either $10,000 total or $10,000 apiece, suspended by what was then NASD for two or three months, censured, and it essentially had to do with—I may be pulling this from the civil case, but I don't think there's any question that everybody knows about it.  As I recall, they were essentially punished for trading for either their or their brokerage's own interests and against the interests of their clients by—by engaging in trades that were at a lower than—buying stock, I believe, at a

---

**[7]**Both sides agree that the district court did not ask the parties whether they had any objections to the sentence just pronounced that had not been previously raised, as required by *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).  Therefore, plain error review does not apply.

**[8]**Notice of Proposed Amendments, 81 Fed. Reg. 92,003, 92,005-06 (Dec. 19, 2016) and Notice of Proposed Amendments, 82 Fed. Reg. 40,651, 40,656-57 (Aug. 25, 2017).  The proposed amendments have not passed.

lower than market price or lower than fair value price from their clients.  And so how should I consider that with regard to—*although there's no criminal history, there is—there is history of pretty serious misconduct that is – that bears some relevance*, I think, to what happened and what brought us here today.

(emphasis added).  The district court then identified the § 3553(a) factors and explained how each factor applied to both Brennan and Dyer.  Referencing the need for deterrence, § 3553(a)(2)(B), the court stated Defendants would not be deterred by a shorter sentence:

> [Y]ou've both been censured, fined, suspended from the securities industry before.  You've had other interactions with regulatory authorities.  Within a . . . relatively short time after these punishments, you were back at it, except this time in a much more aggressive, bolder way.  Your actions suggest to me that a significant sentence is necessary to ensure that you do not engage in criminal conduct again.

Similarly, referencing the need to protect the public, a consideration codified at § 3553(a)(2)(C), the court stated that a longer sentence was necessary to protect the public because Defendants have a history of misconduct:

> [T]he prior discipline with the regulatory agencies concerns me.  Within just a few years of what should have been a very public and very embarrassing punishment, you both began to engage in worse conduct than you had been punished for.  You have a talent for winning over the confidence of investors, and you've shown a proclivity to take advantage of those who trust you.  And I have to try to convince you to stop this conduct as I craft the sentence.

The court declined to depart downward and gave Brennan a total sentence of 48 months, the low end of the recommended Guideline range of 46 to 57 months.

On appeal, Brennan argues that the district court committed procedural error when it did not specifically mention the recidivism studies in its analysis of the § 3553(a) factors.  When a defendant raises a non-frivolous argument, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)).  The transcript clearly establishes that the court did not find Brennan's argument persuasive because Brennan was not, in any true sense, a first-time offender due to his prior censure and fine.  And although the court did not specifically mention the

recidivism studies by name, the district court was not required to accept or reject arguments in a certain way. *See United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010). In short, the district court did not abuse its discretion when it did not apply a downward variance to Brennan's Guidelines calculation.

**IV.**

For the foregoing reasons, we **AFFIRM** Defendants' sentences.