**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0665n.06

**Case No. 19-3909**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Nov 19, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| *Plaintiff-Appellee,* | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE |
| DANIEL PARKER, | ) | NORTHERN DISTRICT OF |
|  | ) | OHIO |
| *Defendant-Appellant.* | ) |  |
|  | ) |  |

BEFORE:    SILER, DAUGHTREY, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge.  Daniel Parker asks this court to overturn his convictions for sexual exploitation of children and receipt and distribution of child pornography. His first two claims center on the argument that the trial court inappropriately participated in his plea-bargaining process and harbored a negative disposition toward him. His second two claims concern the delay in providing contraband images to the jury deliberation room and the decision to resume deliberations with the full set of evidence provided. Because he does not state any claim that warrants reversal, we **AFFIRM** the trial court in full.

**I.**

Daniel Parker and Candis Wynn together made child pornography using Wynn's daughter, a three-year old. Parker gave Wynn explicit text-message instructions on how to molest her daughter on film. And Wynn complied by sending pictures and videos to Parker's phone, which Parker continued to encourage and request.

Before trial, Parker and the government were negotiating a plea agreement. When the parties provided the district court with a copy of the proposed agreement, the court said that it likely would not accept the plea because it was "wildly inconsistent" with the sentence in another child pornography case. (R. 74, Final Pretrial Trans., PageID 832–46.) The court recessed, and the government offered Parker a different, less favorable plea. Parker consulted with his attorney and did not accept the new plea deal.

Parker's defense was that there was insufficient evidence that he was the user of the phone receiving the messages, videos, and images. And he objected to admitting the messages, videos, and images because he claimed that the government had not tied Parker to the phone. But the government presented evidence connecting Parker with the phone, including recorded conversations between Wynn and Parker while Parker was using the phone number and a later search in which officers seized the phone with that number from Parker. Police also found a picture of Parker on Facebook that showed him holding the same type of phone. The court overruled Parker's objection and admitted all of the government's exhibits. The government

displayed the contraband images and videos to the jury during the government's case-in-chief.

The court arranged to provide a computer system to display exhibits in the jury room during deliberations. The computer system allowed the jury to view the text messages and most other evidence. But because of an oversight on the part of the court, the secured contraband pornographic images and videos were not on the computer system. And before the government could transfer the images to the computer system, the jury revealed that they had reached a verdict.

Despite previously objecting to contraband evidence, Parker's attorney moved for a mistrial because the jury had reached its verdict without access to that evidence in the jury room. In response, the government stated that the jury had been able to consider most of the relevant evidence, and that they had seen the images during the trial. But given the defendant's objection, the government suggested that the jury could deliberate with the benefit of the additional exhibits before announcing their verdict. The court proposed to bring the jury in, explain that there had been a delay in giving them the exhibits, and instruct them to deliberate more. Parker's attorney did not object. After resuming, the jury then asked for a list of the new exhibits by number, and Parker's attorney stated that it would be "appropriate" to send them a list of the added exhibit numbers. (R. 73, Trial Trans., PageID 811.) After renewed deliberations, the jury convicted Parker of sexual exploitation of children under 18 U.S.C. § 2251(a) and receipt and distribution of child pornography under 18 U.S.C. § 2252(a)(2).

**II.**

We first look at Parker's claim that the district court impermissibly participated in the plea negotiations. We review for plain error any alleged Rule 11 error to which the defendant did not object. *United States v. Vonn*, 535 U.S. 55, 59 (2002). Showing plain error requires "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Dyer*, 908 F.3d 995, 1004 (6th Cir. 2018), *cert. denied,* 139 S. Ct. 1610 (2019) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (alteration removed)). Even then, review is discretionary, and we only correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young,* 470 U.S. 1, 15 (1985) (alteration removed)).

Parker contends that the district court knew that the plea agreement was not yet final and improperly inserted itself, causing the government to abandon the deal and offer a less favorable plea. The first proposal had involved dismissing Counts I and IV in exchange for a guilty plea on Count II—a five-year minimum and 20-year maximum sentence. The second was to dismiss Counts II and IV in exchange for a guilty plea on Count I—a 15-year minimum and 30-year maximum.

A district court judge may not engage in plea negotiations. A judge cannot try to influence a defendant to plead guilty. *See United States v. Herron*, 551 F.2d 1073, 1077 (6th Cir. 1977) (noting that it would be "serious" if a judge "delivered an ultimatum" threatening "the maximum sentence allowed by law" if the defendant refused to plead guilty). The court also cannot disclose the probation officer's sentence

recommendations or the likely sentence before the defendant decides whether to plead or go to trial. *See United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980). It also cannot consent to transfer the case as part of the plea bargain. *Id.*

Parker fails to note, however, that the trial court must be involved in the acceptance or rejection of the plea. Rule 11 makes clear that the parties "must disclose" the agreement to the court, and the court "may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." FED. R. CRIM. P. 11(c)(2), (c)(3)(A). He offers no reason that the court violated his rights by indicating rejection before he formally accepted the plea. Thus, Parker cannot show the first or second prongs of the plain error requirement since there is no obvious error.

Parker also cannot show that the error impacted substantial rights because there is no right to a plea offer or the court's acceptance of a plea offer. *See Missouri v. Frye*, 566 U.S. 134, 148–49 (2012). "A court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Because Parker had no right to the more favorable plea, losing the plea is not a loss of substantial rights.

Parker argues that the trial court here acted similarly to the trial court in *United States v. Ushery*, 785 F.3d 210 (6th Cir. 2015). There, the trial court set a "tentative plea date" on which the defendant would either plead guilty or "jeopardize" his points for acceptance of responsibility. *Id.* at 214. At the rearraignment on that date, the court reiterated that it was the "drop-dead date" for pleading guilty and

receiving the points for accepting responsibility. *Id.* The parties, in front of the sitting court, then negotiated the terms that the defendant preferred to change in the plea. The court weighed in with suggestions about the disputed items of forfeiture and a summary of what it understood the new plea agreement to be. On appeal, we stated that "[b]y allowing the parties to negotiate the final terms of a plea agreement in its presence, the district court at the very least did not follow best practices, and may in fact have violated Rule 11(c)(1)." *Id.* at 218.

Even if the conduct in *Usury* constituted participation in plea negotiation, this case is different. Here, after the court stated that it would likely reject the plea agreement that the parties had reached, the court recessed proceedings to allow the parties to discuss a new plea agreement. And, importantly, the court did not suggest any negative consequences of failing to plead guilty. Instead, it reminded Parker of his right to proceed to trial. The only discussion the court had with counsel was to question the disparity between this case and another child pornography case and to approximate the sentence minimum and maximum that the plea would carry. Nothing in the record here shows that the trial judge participated in the plea negotiations and thereby committed plain error.

### III.

Parker next argues that the trial court erred by not recusing itself after allegedly showing a negative disposition toward Parker. Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This does not require recusal every time a defendant

asserts that the judge's impartiality is dubious, "no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). Rather, a judge has a duty not to recuse when there is not a reason for it. *United States v. Hoffa*, 382 F.2d 856, 861 (6th Cir. 1967). Here, the court stated during pretrial conference that the facts here were potentially "worse" than another child pornography case. (R. 74, PageID 834–35.)

Our standard of review here is tricky. Parker did not request recusal in the trial court, forfeiting the argument. Typically, we would review a forfeited argument for plain error in a criminal case, as Parker requests and as many of our sister circuits have done.[1] *See* Fed. R. Crim. P. 52; *United States v. Powell*, 236 F. App'x 194, 200 (6th Cir. 2007) (citing *United States v. Mahon,* 444 F.3d 530, 532 (6th Cir.2006)). But

---

[1] *See, e.g.*, *United States v. Caramadre*, 807 F.3d 359, 373–74 (1st Cir. 2015); *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008); *United States v. Antar*, 53 F.3d 568, 573 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001); *United States v. Davis*, 529 F. App'x 375, 378 (4th Cir. 2013); *United States v. Perez*, 956 F.3d 970, 974–75 (7th Cir. 2020) (§ 445(a)); *United States v. Dorsey*, 829 F.3d 831, 835 (7th Cir. 2016) (§ 455(b)); *United States v. Delorme*, 964 F.3d 678, 680 (8th Cir. 2020); *United States v. Holland*, 519 F.3d 909, 911–12 (9th Cir. 2008); *United States v. Nickl*, 427 F.3d 1286, 1297–98 (10th Cir. 2005); *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004).

The Fifth Circuit, however, rejects recusal motions raised for the first time on appeal in a criminal case if the appellant "waited to see if he liked an outcome before springing the recusal issue." *United States v. Sanford*, 157 F.3d 987, 989 (5th Cir. 1998); s*ee also* United *States v. York*, 888 F.2d 1050, 1053–56 (5th Cir. 1989). The Tenth Circuit has also denied review of a waived recusal motion in a criminal case. *See United States v. Stenzel*, 49 F.3d 658, 661 (10th Cir. 1995). In addition, many older circuit decisions favored a harsher approach, recognizing "the sensible principle that a defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge." *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990) (citation, alteration, and quotation marks removed) (collecting cases); *see also United States v. Barrett*, 111 F.3d 947, 951–52 (D.C. Cir. 1997) (collecting cases).

the government says that because § 455 imposes an independent duty to recuse and is therefore "self-executing," we should review for abuse of discretion.[2] Because we would reject Parker's arguments under either standard, we will review for an abuse of discretion.[3]

"Not *all* unfavorable disposition towards an individual (or his case) is properly described [as bias or prejudice]." *Liteky v. United States*, 510 U.S. 540, 550 (1994). Rather, there must be a wrongfulness in that the view is either "undeserved" or "rests upon knowledge that the subject ought not to possess." *Id.* For this reason, claims of bias based on opinions formed during current or prior proceedings face an "uphill battle." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016). Only "personal" bias—also called "extrajudicial" bias—will justify recusal. *Wheeler v. Southland Corp.*, 875

---

[2] Parker also mentions the idea of § 455 being self-executing and cites *Latham v. United States*, 106 Fed. App'x 395, 397 (6th Cir. 2004). *Latham* states that § 455 is self-executing but otherwise does not support abuse of discretion review in this case. In that case, the habeas petitioner made a recusal motion, which the district court denied. *Id.* at 396. The court reviewed that denial for abuse of discretion, though it noted that it would consider allegations of bias raised for the first time on appeal because § 455 is self-executing. *Id.* at 396–97.

[3] There is some controversy about whether the parties can ever waive or forfeit the applicable standard of review. *Compare United States v. Williams*, 641 F.3d 758, 763–64 (6th Cir. 2011) ("[B]ecause the United States failed to request that we apply plain-error review, it has forfeited any argument that we should apply that standard . . . ."); *United States v. Wilson*, 802 F. App'x 976, 981 (6th Cir. 2020) ("And in her reply, Wilson concedes that her course of conduct at the district court results in plain-error review now. That is the standard we will apply."); *with Williams*, 641 F.3d at 771 (Thapar, J., concurring) ("[A]llowing parties to unilaterally waive plain error review is hard to square with the language of Rule 52, which says nothing about the ability to waive the standard of review."); *Wilson*, 802 F. App'x at 982 ("We have carved out an exception to this general rule, applying a less-deferential standard of review in cases where the government waives plain-error review . . . But we should not extend the exception to allow criminal defendants to stipulate to a less-favorable standard of review."). This is also an issue we need not resolve.

F.2d 1246, 1251–52 (6th Cir. 1989). This requires "some source other than participation in the proceedings or prior contact with related cases." *Id.* And opinions formed based on the facts introduced during the proceeding will generally "not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Even "hostile" comments are not enough to mandate recusal unless they are extreme or derived from an extrajudicial source. *Id.* An example of such bias would be disparaging the nationality of the defendant by declaring that all people of that nationality have "hearts [that] are reeking with disloyalty." *Id.*

The judge's assessment of the severity of Parker's offense was an opinion based on the facts of the proceeding and prior contact with Wynn's related case and similar cases. And Parker has not shown that the judge's opinion was extreme or threw into question the ability to judge fairly. There is no evidence of improper bias.[4]

**IV.**

Parker next argues that the district court abused its discretion by denying his motion for a mistrial. The parties agree that the abuse of discretion standard applies. *See United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994).

Parker asserts that, because the presumption of innocence was "fully intact" until the jury announced the verdict, this court should assume that the verdict the trial court ordered the jury to disregard was a not-guilty verdict. But the presumption

---

[4] Indeed, the trial court granted a substantial downward variance here when it sentenced Parker, suggesting that it harbored no ill-will toward him.

of innocence is an assurance that the burden remains on the government to establish guilt beyond a reasonable doubt. *See Herrera v. Collins*, 506 U.S. 390, 398 (1993). It does not mean that the court presumes the jury has reached a defendant-friendly verdict until they announce a contrary verdict. Here, the jury's first verdict may well have been a guilty verdict, even though the jury never disclosed it and no one else was in the room where it happened.

Parker adds that the court had two other choices: It could have declared a mistrial, or it could have simply allowed the jury to announce the first verdict. But Parker objected to hearing the first verdict without the jury seeing the omitted exhibits.

Under the doctrine of "invited error," a party may not induce a ruling—even in good faith—and later try to "profit from the legal consequences of having the ruling set aside." *Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 61 (6th Cir. 1991). Since Parker now argues that the trial court would have been right to take the very action (announcing the original verdict) that it would have if he had not objected, this doctrine prevents Parker's complaint now. Parker casts the decision to resume deliberations with the exhibits as one that the government thrust upon the court, but the transcript reveals that Parker first objected to announcing the original verdict. This led directly to the government's proposal of a less extreme solution of resuming the deliberations with the evidence at hand. And Parker did not object to this result.

It is true that a court can still review invited error when the interests of justice require. *United States v. Howard*, 947 F.3d 936, 945 (6th Cir. 2020). This is

particularly salient when the government is equally at fault or the defendant seeks to vindicate a constitutional right. *See id.* But even if this justified review here, Parker has no argument that the absence of the evidence, or adding the contraband images to the computer system, did anything to affect the fairness of the verdict. The parties agree that Parker's defense hinged on questioning the link between Parker and the phone, not the nature of the photographs or videos. And neither party disputes that the jury had seen the exhibits during the trial. Even if omitting the contraband images from the deliberation room were error, the interests of justice would still not require reversal on these facts.

## V.

Finally, Parker argues that the court erred when it nullified the first verdict and directed continued deliberations "with an emphasis upon specific additional government exhibits." This complaint repeats much of the previous one, but in the context of a due process challenge. We review this for plain error because Parker did not object to starting the new deliberations or to designating the new exhibits. *Olano*, 507 U.S. at 731–32.

This claim also fails under the invited error doctrine. Not only did Parker's counsel not object to noting the new exhibit numbers for the jury, but he stated that it would be "appropriate." (R. 73, Trial Trans., PageID 811.) He cannot now claim relief based on the supposed undue influence this caused.

## VI.

For these reasons, we **AFFIRM** the district court.