

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2002

# USA v. Merlino

Precedential or Non-Precedential: Precedential

Docket No. 01-4041

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Merlino" (2002). *2002 Decisions.* Paper 713.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/713

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 8, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 01-4041

UNITED STATES OF AMERICA,

v.

JOSEPH MERLINO
a/k/a
SKINNEY JOEY

Joseph Merlino,
        Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 01-cr-00197-1)
District Judge: Honorable Dickinson R. Debevoise

Argued on March 21, 2001

Before: NYGAARD, ROTH and AMBRO, Circuit Judges

(Opinion filed November 8, 2002)


        Christopher D. Warren, Esquire
         (Argued)
        1604 Locust Street
        Philadelphia, PA 19103
         Attorney for Appellant

        Christopher J. Christie
        United States Attorney
        Laura J. Kaplan
        Assistant United States Attorney
        George S. Leone
        Chief, Appeals Division
        District of New Jersey
        970 Broad Street, Room 700
        Newark, NJ 07102-2535

        Frank J. Marine (Argued)
        Senior Litigation Counsel
        U.S. Department of Justice
        Organized Crime & Racketeering
         Section
        1301 New York Ave., NW, #700
        Washington, DC 20005
         Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

Appellant Joseph Merlino has been charged in the District of New Jersey with advancing a racketeering enterprise, the Philadelphia La Cosa Nostra Family, by participating in the murder of Joseph Sodano. Merlino claims that his indictment violates the principle of collateral estoppel embodied in the Double Jeopardy Clause because another jury has already found that he did not participate in Sodano's murder. We conclude that, under the unusual circumstances of this case, Merlino cannot prove that the jury decided in his favor when they checked the "Not Proven" boxes corresponding to the Sodano murder racketeering acts. Merlino is, therefore, foreclosed from invoking collateral estoppel to bar his prosecution under

2

the New Jersey indictment. We will, therefore, affirm the order of the District Court, denying Merlino's motion to dismiss the indictment.

I. Factual and Procedural History

This case is the tale of two indictments, one in Pennsylvania and one in New Jersey. A multi-defendant, multi-count trial took place in the United States District Court for the Eastern District of Pennsylvania. Merlino was convicted, among other offenses, of two Racketeer Influenced and Corrupt Organizations Act (RICO) counts. In Count I, Merlino was charged with conspiring from March 1, 1990, to March 30, 2000, to participate in the affairs of an enterprise, the Philadelphia La Cosa Nostra Family, through a pattern of racketeering activity in violation of 18 U.S.C. S 1962(d). In Count II, he was charged with participating in the affairs of the Philadelphia La Cosa Nostra Family during the same period in violation of S 1962(c). Specifically, the government accused Merlino of violating SS 1962(c) and (d) by committing twenty-one racketeering acts. Those acts included conspiring to murder and murdering a former member of the La Cosa Nostra, Joseph Sodano. The jury in the Pennsylvania trial found that Merlino had committed six of the racketeering acts charged against him under Count I and five of the racketeering acts under Count II. As for the remaining racketeering acts, including the murder of Joseph Sodano, the jury indicated on the verdict sheet that they were "Not Proven."

The government alleges that, despite the checking of "Not Proven" on the special verdict sheet, the jury's actual finding as to the Sodano murder is not clear because the instructions given to the jury by the District Court, in answer to a jury question during deliberations, permitted the jury to violate its unanimity instruction.

To understand the government's argument, it is helpful to review the relevant parts of the District Court's

instructions to the jury. When the case was submitted to the jury, the jurors were given special interrogatories to assist them in determining whether each of the defendants

3

was guilty of the RICO offenses charged in the indictment. The judge referred to the special interrogatories and instructed the jury that:

> For each defendant you must unanimously agree as to the identity of two racketeering acts or one collection of unlawful debt which the defendant agreed that someone would commit. On the verdict sheet I will give you, you should indicate whether you find a racketeering act or a collection of unlawful debt to be proven beyond a reasonable doubt or not proven.
>
> And, the allegations from the indictment are there, directs you to the count, and then says, proven or not proven. And you will discuss and determine whether or not -- and you'll check off which it is. If you check off not proven, not proven, not proven, not proven, each one you have to consider separately, each act.

* * *

> When you review the indictment, you will see that the Government has alleged that the defendants carried out the RICO offenses charged in Counts 1 and 2 through 36 racketeering acts, 6 racketeering acts that involve acts of murder, attempted murder, or conspiracy to murder, 18 racketeering acts involving extortion in violation of State and Federal law, 3 racketeering acts involving gambling violations, 6 racketeering acts involving receipt of stolen property and 2 racketeering acts involving distribution of cocaine.

(emphasis added).

Thus, the jury was instructed that it must unanimously agree that a racketeering act or collection of unlawful debt was either proven or not proven. In addition, the jury was told that, to find a defendant guilty of a RICO offense, it must agree that he had committed at least two racketeering acts or one collection of unlawful debt. Furthermore, as the judge explained, unanimous agreement on more than two racketeering acts per defendant would not be necessary for a guilty verdict on a RICO count as to that defendant.

Two days after the jury began its deliberations, it submitted the following question to the District Court:

4

> Racketeering Acts. Once we determine that the defendant has committed one unlawful collection of debt or two or more racketeering acts, do we need to

decide proven or not proven on all the racketeering acts?

The judge responded, "Yes."

Two days later, the jury requested additional clarification on this issue. It sent a note asking:

> If, on a given racketeering act that has no bearing on the count decision we cannot come to a unanimous decision, is it within the law to unanimously decide that the act is "not proven"?

Over the objections of the government, the judge again told them, "Yes."

The jury ultimately returned its verdict. On Merlino's verdict sheet, the jury found Merlino's participation in six racketeering acts under Count I and five acts under Count II to have been "Proven." The remaining racketeering acts, including the Sodano murder, were checked by the jury as "Not Proven." The government argues that the supplemental instructions allowed the jury to mark the special verdict "Not Proven" as to Merlino's involvement in Sodano's murder even though we have no idea of the actual jury vote on that count. Indeed, we do not know if the jury had unanimously found Merlino's participation in the Sodano murder acts to be "Not Proven" prior to the supplemental instructions or if, after the supplemental instructions, despite a vote count of anywhere from 11 to 1 for acquittal to 11 to 1 for conviction, the jury decided to mark those acts "Not Proven."

Soon after the Pennsylvania trial, the government charged Merlino, in the United States District Court for the District of New Jersey, with violating other provisions of RICO under 18 U.S.C. SS 1959(a)(5) and 1959(a)(1) and (2), the so-called "VICAR" offenses which prohibit the commission of violent crime in aid of racketeering. In the New Jersey indictment, the government again charged Merlino with conspiring to murder Joseph Sodano and aiding and abetting in that murder, in violation ofSS

1959(a)(1), (2), and (5). In a pre-trial motion, Merlino moved to dismiss this new indictment, arguing it was barred by the special verdict of the Pennsylvania jury and the doctrine of collateral estoppel. After the District Court denied his motion, Merlino appealed.

II. Standard of Review

Since collateral estoppel as a bar to reprosecution is a component of the Double Jeopardy Clause and is an issue of law, our review is plenary. See United States v. Smith, 82 F.3d 1261, 1265-66 (3d Cir. 1996)

III. Jurisdiction

The District Court had subject matter jurisdiction after a grand jury indictment pursuant to 18 U.S.C. S 3231. We have appellate jurisdiction over the pre-trial order pursuant to 28 U.S.C. S 1291 and the collateral order doctrine. See United States v. Abney, 431 U.S. 651 (1977).

## IV. Discussion

The Double Jeopardy Clause of the Fifth Amendment protects an accused from successive prosecutions for the same offense. See Brown v. Ohio, 432 U.S. 161, 165 (1977). This case does not implicate that traditional bar against successive prosecutions because Merlino has been accused of two separate offenses. In the first trial Merlino was convicted of violating RICO pursuant to 18 U.S.C.S 1962 (c) and (d). In the indictment before us now, however, he is charged with violating 18 U.S.C. S 1959, which prohibits the commission of violent crime in aid of racketeering. Because that VICAR offense requires proof of an element that the RICO offense does not, and vice-versa, they are different offenses for the purposes of the Double Jeopardy Clause. See Blockburger v. United States, 284 U.S. 299, 304 (1932).

The Double Jeopardy Clause, however, also embodies principles of collateral estoppel that can bar the relitigation of an issue actually decided in a defendant's favor by a valid and final judgment. See Ashe v. Swenson , 397 U.S.

6

436, 443 (1970). Merlino argued to the District Court, and argues again before us, that these principles require the dismissal of his New Jersey indictment because the Pennsylvania jury had entered a valid and final judgment, acquitting him of Sodano's murder.

The District Court denied Merlino's motion to dismiss the indictment. It held that collateral estoppel did not apply because the Pennsylvania District Court's instructions to the jury made it impossible to determine whether the jury unanimously acquitted Merlino of involvement in Sodano's murder. Indeed, one cannot tell if the vote "Not Proven" was unanimous or if it represented a split decision which might in fact not even have been a majority vote for "Not Proven." Merlino contends that the District Court's ruling was erroneous because the principles of collateral estoppel enunciated by the Supreme Court in Ashe v. Swenson do not require him to prove that he was unanimously acquitted. He also argues, in the alternative, that he can prove he was unanimously acquitted. We conclude, however, that the District Court properly dismissed Merlino's motion. To claim the benefit of collateral estoppel he must prove that the Pennsylvania jury unanimously acquitted him of participation in Merlino's murder. He cannot meet that burden.

A.

In Ashe v. Swenson the Supreme Court held that the Double Jeopardy Clause prohibits relitigation of an issue when the jury has decided that issue in a defendant's favor by a "valid and final judgment." Id. at 443; accord United States v. Console, 13 F.3d 641, 664 (3rd Cir. 1993). A "final judgment" in favor of a criminal defendant is an acquittal, United States v. Lanoue 137 F.3d 656 (1st Cir. 1998), and an acquittal, in order to bar future litigation, must be unanimous; a "hung jury" does not bar future prosecutions. See Illinois v. Somerville, 410 U.S. 458, 463 (1973). Because a criminal defendant bears the burden of proving that the litigation of an issue is foreclosed, Dowling v. United States, 493 U.S. 342, 350-1 (1990); United States v. Console, 13 F.3d at 665, n. 28, it follows, under circumstances in which a unanimous vote is required, that

the defendant can claim the benefit of collateral estoppel only if he can prove that the jury vote was in fact unanimous.

In order to demonstrate a unanimous vote, the face of a verdict sheet may not alone be sufficient. For example, in Ashe, the Supreme Court held that when a defendant claims a general verdict forecloses litigation of an issue, he must demonstrate that the issue was actually decided, not just by referring to the verdict itself, but by examining "the record of the prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter." Ashe, 397 U.S. at 443. See also Schiro v. Farley, 510 U.S. 222, 232-36 (1994). Jury instructions are part of that analysis. See e.g., United States v. Marino, 200 F.3d 6, 8-11 (1st Cir. 1999) (rejecting defendants' collateral estoppel arguments because "their jury charge contained considerable ambiguity.").

Although the cases we cite above involved general verdicts, we reject the contention that the type of verdict changes the defendant's burden. Whether the verdict was general or special, the defendant bears the burden of proving the issue he wants to foreclose was decided in his favor. See, e.g., Dowling v. United States, 493 U.S. at 350-51 (stating that the defendant had the burden to prove a general verdict decided the issue in its favor); United States v. Ham, 58 F.3d 78, 85 (4th Cir. 1995) (stating a jury's special verdict must necessarily resolve an issue in the defendant's favor before collateral estoppel can apply.). See also United States v. Console, 13 F.3d at 664 (same).

B.

Applying these rules to the case before us, we hold that, despite the notations on the special verdict sheet, Merlino cannot prove that the jury unanimously, or even by a majority, acquitted him of participation in Sodano's murder, and thus he cannot foreclose litigation of that issue. On the special verdict sheet, the Pennsylvania jury

checked the "Not Proven" boxes corresponding to the Sodano murder. Because, however, of the supplemental instructions given by the District Court, those check marks

are ambiguous. They do not demonstrate that the jury unanimously found that the Sodano murder was "Not Proven."

As we set out in Section I above, after five days of deliberations, the Pennsylvania jury asked the court to clarify its instructions. The jury sent a note inquiring, "If, on a given racketeering act that has no bearing on the court decision we cannot come to a unanimous decision, is it within the law to unanimously decide that the act is 'not proven'?" Over the objections of the government, the judge responded "Yes." That instruction makes the jury's vote ambiguous because we cannot tell from the face of the verdict sheet whether the vote was unanimously "Not Proven" or whether the jury unanimously decided that they were unable to reach a unanimous decision as to"Proven" or "Not Proven," i.e., whether they were "hung" on that issue.

Only the first of these interpretations of the jury note would bar the current case against Merlino because only the first is a unanimous acquittal and only the first resolves the issue Merlino wants to preclude from consideration in the New Jersey prosecution. The second interpretation of the note is not a unanimous acquittal and therefore is not a final judgment in favor of the defendant. Because Merlino cannot prove which is the actual jury vote, he cannot preclude the issue of his participation in the Sodano murder.

C.

Merlino challenges our conclusion on two grounds. First, he claims that the jury's verdict is unambiguous regardless of the trial court's instructions. He contends that the jury was essentially instructed that its lack of unanimity could prove reasonable doubt, and then applied that instruction by unanimously deciding that the act was "not proven." If this were the only possible interpretation of the jury's special verdict, we would agree with Merlino. It is not, however, the only interpretation. As discussed above, the trial court's instructions could also be interpreted to allow the jury to check the "not proven" box if the jury agreed

that it could not reach a unanimous conclusion on"Proven" or "Not Proven." Because of this ambiguity, Merlino fails to prove that the issue he wants to foreclose was decided in his favor by the Pennsylvania jury.

Merlino also contends, despite any ambiguity, that the

special verdict is a valid and final judgment. He denies that the verdict in a criminal case must be a unanimous acquittal before it precludes future litigation. He asserts that any judgment is final if it is rendered by a court of competent jurisdiction and if it is "procedurally definite," leaving nothing more for the jury to do. To support his claim, he cites Fong Foo v. United States, 369 U.S. 141 (1962), and Sanabria v. United States, 437 U.S. 54 (1978), which hold that an erroneous jury instruction does not make an acquittal non-binding for collateral estoppel purposes. He argues that these cases contradict a holding that collateral estoppel is not applicable here.

Those cases do not, however, address the question whether an acquittal must be unanimous to have preclusive effect. They consider other issues not relevant here. In Fong Foo, the Supreme Court held that the 5th Amendment's Double Jeopardy clause barred further prosecution of a defendant who was acquitted even though the acquittal was based on an "egregiously erroneous foundation." 369 U.S. at 142-3. In Sanabria , the Court made a similar holding: an acquittal based on an erroneous evidentiary ruling barred further prosecution of the defendant for the same offense.  437 U.S. at 68-69.

These cases hold that an erroneous legal foundation does not alter the binding affect of a unanimous acquittal. They do not alter the rule that a "hung jury" does not bar future litigation. See Johnson v. Lousisiana, 406 U.S. 356, 363 (1972). Foo Fong and Sanabria do not, therefore, affect our decision. Our holding rests on Merlino's inability to prove he was unanimously acquitted, not on the accuracy of the trial court's instructions. He, thus, could not claim the benefit of collateral estoppel.

V. Conclusion

For the above stated reasons, we will affirm the District Court's denial of the motion to dismiss the indictment and we will remand this case for further proceedings.

10

NYGAARD, Circuit Judge, dissenting:

The issue on appeal is whether we must accept the jury's finding of "Not Proven" on its face, or whether we are empowered to look behind its finding and conclude that it is not clear whether the jury actually reached a unanimous decision on this critical predicate act. I must respectfully dissent because I believe that, under the doctrine of collateral estoppel, the predicate acts that the jury decided were "Not Proven" cannot be re-litigated. I therefore conclude that the District Court should have dismissed the charges.

The government argues that because of the two supplemental instructions given to the jury in response to the jury's questions, we cannot be sure if the jury truly

reached a unanimous decision on the murder-based predicate acts. I submit that looking behind jury verdicts to reconstruct the jury's thinking, or attempting to determine how it may have reached consensus, is pure speculation and contravenes our fundamental constitutional heritage of treating jury verdicts as unimpeachable. The government claims that because of the judge's supplemental instructions, the jury probably was not unanimous when it found that the government failed to prove the murder-based predicate acts. But we do not know how the jury voted after the judge issued the second supplemental instruction, and we should not pretend that we do. We only know that it decided that this predicate act was not proven.

In Ashe v. Swenson, the Supreme Court held that when a defendant claims a general verdict forecloses litigation of an issue, he must demonstrate that the issue was actually decided by examining "the record of the prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter." 397 U.S. 436, 444 (1970). However, the Court specifically based its holding on a situation "[w]here a previous judgment of acquittal was based upon a general verdict, as is usually the case." Id. That holding makes sense for a general verdict, where it is difficult to determine which particular facts the jury actually decided. It makes no sense when we have a special verdict and we know exactly what the jury concluded. Here, the special verdict form clearly indicates how the jury resolved each

11

issue. Put simply, the jury decided that the predicate acts were "Not Proven." I would accept that verdict as the jury's adjudication of the murder charges, and prohibit that issue from being raised against Merlino again.

The government argues that Merlino bears the burden of proving that the issue he wants to foreclose was decided in his favor, whether the verdict was general or special. I conclude that he has done just that. Moreover, the case that the government cites for support does not determine the issue. United States v. Console, upon which the District Court relied, involved a hung jury. 13 F.3d 641, 664 (3d Cir. 1993). In Console, we explained that"a response to a special interrogatory regarding an element of a'hung' count is neither a 'final' judgment nor a determination'necessary' to a final judgment." Id. Here, however, the jury was not "hung." It returned a verdict. We have a final judgment.

The jury's decision on the murder-based predicate acts was the functional equivalent of a verdict on the stand-alone murder charge. Apprendi v. New Jersey holds that any fact that has the effect of increasing the maximum penalty permitted by law is an element of the offense, which must be submitted to a jury and proven beyond a reasonable doubt. 530 U.S. 466, 476 (2000). If the jury had found that the murder-based predicate acts were proved, then Merlino could have faced life imprisonment. The government was therefore obligated to prove a predicate act

of murder beyond a reasonable doubt. Because a favorable verdict for the government on racketeering acts 4A and 4B would have been tantamount to a conviction for the Sodano murder and conspiracy offense, the converse should be true: the "Not Proven" verdicts should be treated as acquittals for collateral estoppel purposes.

The District Court rejected this Apprendi reasoning because "[t]he sentencing consequences flow from the racketeering acts that were Proven" and that "[t]o give similar weight to the Not Proven acts is unjustified." But the District Court's rationale leads to inequities. Following its logic, as long as the government fails to prove verdicts on certain predicate acts, it could continue to use those predicate acts in other RICO prosecutions until they are "Proven." The defendant would be forced to prove his

12

innocence of that charge repeatedly. Yet the purpose of the Double Jeopardy Clause and collateral estoppel is to protect defendants from having to face serial trials for the same offense.

Appellee's argument boils down to this: the District Court gave an erroneous jury instruction that theoretically could have permitted the jury to say it was unanimous when it really was not. But, this argument goes nowhere. An acquittal may not be overturned based on "an egregiously erroneous foundation." Fong Foo v. United States, 369 U.S. 141, 143 (1962); Sanabria v. United States, 437 U.S. 54, 74 (1978) ("there is no exception permitting a retrial once the defendant has been acquitted, no matter how 'egregiously erroneous' the legal rulings leading to that judgment might be").

The general principles underlying the Fifth Amendment's Double Jeopardy Clause are designed to ensure that the defendant does not have to face the burdens and hazards of trial again and again, especially when the government has obtained the benefit of a "dry run." Here, the defendant should not be punished for a quirky, and perhaps erroneous, jury instruction. I would therefore reverse.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13