**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2085
_____

UNITED STATES OF AMERICA

v.

JOHN SHERMAN JUMPER,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 4:18-cr-00128-001)
District Judge: Honorable Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
June 12, 2023
_____

Before: PORTER, FREEMAN, and FISHER,
*Circuit Judges*

(Filed: July 14, 2023)
_____

Edward J. Rymsza, III
Miele & Rymsza
125 East Third Street
Williamsport, PA 17701

*Counsel for Appellant*

Navin Jani
Office of the United States Attorney
228 Walnut Street
Suite 220, P.O. Box 11754
Harrisburg, PA 17101

George J. Rocktashel
Office of the United States Attorney
240 W Third Street
Suite 316
Williamsport, PA 17701

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

The District Court sentenced John Jumper to 78 months' imprisonment and ordered him to pay restitution for fraudulently transferring assets from a company pension plan to his own accounts. In a civil securities action for the same misconduct, a district court in Tennessee disgorged Jumper of his ill-gotten gains. Jumper appeals his sentence. He asserts

2

that his criminal sentence violates the Double Jeopardy Clause and principles of collateral estoppel. He also claims that the District Court improperly concluded that the Bureau of Prisons (BOP) could treat his medical issues. We will affirm the criminal sentence.

I

Jumper was a securities broker-dealer in Memphis, Tennessee. Acting in that capacity, he arranged financing on behalf of a group of private investors for the purchase of Snow Shoe Refractories, LLC, a Pennsylvania fire-brick manufacturer. Jumper fraudulently obtained authority to transfer Snow Shoe's pension plan assets by forging the majority stakeholder's signature on several documents. Between 2007 and 2016, Jumper transferred $5.7 million from the pension plan to accounts he controlled.

The government pursued both civil and criminal actions against Jumper. The Securities and Exchange Commission (SEC) filed a civil complaint against Jumper for securities fraud in the Western District of Tennessee. And the Department of Justice filed criminal charges against Jumper in the Middle District of Pennsylvania. In the civil action, the Tennessee District Court entered a default judgment for the SEC and ordered Jumper to disgorge all $5.7 million of ill-gotten gains and to pay prejudgment interest of $726,758.79. In the criminal proceedings, Jumper pleaded guilty to one count of wire fraud. As part of his plea agreement, Jumper agreed to make full restitution and the parties stipulated to a loss of $1.5 to $3.5 million.

At criminal sentencing, Jumper requested a downward departure or variance based on various medical issues. The

3

District Court considered his request, heard argument from Jumper and his counsel, and discussed the relevant 18 U.S.C. § 3553(a) factors. The District Court denied Jumper's requests, explaining, "it would appear that the Bureau of Prisons is equipped to provide consistent and adequate medical care." App. 125a; *see also* App. 146a.

The District Court sentenced Jumper to 78 months' incarceration, a sentence at the bottom of the Guidelines range of 78–97 months, and ordered him to pay $2,426,550 in restitution. At Jumper's request, the District Court recommended that Jumper be placed in either a BOP medical facility or a prison with a medical facility. Jumper appealed his sentence.

II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742.

We review challenges under the Double Jeopardy Clause de novo. *United States v. Ayala*, 917 F.3d 752, 759 (3d Cir. 2019). We review the procedural and substantive reasonableness of a sentence under an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc). "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.

4

III

A

Jumper asserts that his criminal sentence violates the Double Jeopardy Clause because he was already penalized with disgorgement in a civil suit brought by the SEC in the Western District of Tennessee. Today, we join every other circuit to address the issue in holding that the Double Jeopardy Clause does not prevent a person subject to a disgorgement order from being criminally sentenced for the same conduct.

The Double Jeopardy Clause of the Fifth Amendment instructs that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "[T]he Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (citation and quotation marks omitted). Instead, it "protects only against the imposition of multiple *criminal* punishments for the same offense." *Id.* at 99 (citations and parenthetical information omitted). *Hudson* provides us with a framework for deciding "[w]hether a particular punishment is criminal or civil." *Id.*

Eight circuits have preceded us in holding that disgorgement is not a criminal punishment and thus does not implicate the Double Jeopardy Clause. *See United States v. Bank*, 965 F.3d 287, 296–97 (4th Cir. 2020); *United States v. Dyer*, 908 F.3d 995, 1003–04 (6th Cir. 2018); *United States v. Melvin*, 918 F.3d 1296, 1301 (11th Cir. 2017); *United States v. Van Waeyenberghe*, 481 F.3d 951, 959 (7th Cir. 2007); *United States v. Perry*, 152 F.3d 900, 904 (8th Cir. 1998); *SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998); *United States v.*

5

*Gartner*, 93 F.3d 633, 635 (9th Cir. 1996); *SEC v. Bilzerian*, 29 F.3d 689, 696 (D.C. Cir. 1994). These cases guide our analysis under *Hudson*.

Beginning with the statutory text, we "ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Hudson*, 522 U.S. at 99 (quoting *United States v. Ward*, 448 U.S. 242, 248 (1980)). We conclude that "Congress expressly established a preference for disgorgement to be a civil remedy." *See Dyer*, 908 F.3d at 1002. The district court in Jumper's SEC action ordered disgorgement under 15 U.S.C. § 78u(d)(5), which gives federal courts the authority to grant "equitable relief." **Red 5.** *See Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) ("a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)"). "[S]uits in equity are considered civil actions." *Bank*, 965 F.3d at 298 (citation omitted). And § 78u(d) is labeled, in relevant part, "money penalties in civil actions."[1] *See Hudson*, 522 U.S. at 103 (finding that Congress intended money penalties to be civil in nature

---

[1] In 2021, Congress added disgorgement to the list of remedies that a district court could grant in a civil action brought by the SEC for securities violations. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4625–26 (codified at 15 U.S.C. § 78(u)(d)(3)(ii), (u)(d)(7)). Previously, courts looked to scattered statutes, like § 78(u)(d)(3), to derive a legal basis for the remedy. *See Bank*, 965 F.3d at 297.

because 12 U.S.C. § 93(b)(1) "expressly provide[d] that such penalties [were] 'civil'").

At step two of the *Hudson* analysis, we "inquire[] further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 99 (quotation marks, alterations, and citations omitted). Only the "clearest proof" can "transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (quoting *Ward*, 448 U.S. at 249). For guidance, we look to the seven *Kennedy* factors:

> (1) [w]hether the sanction involves an affirmative disability or restraint;
>
> (2) whether it has historically been regarded as a punishment;
>
> (3) whether it comes into play only on a finding of *scienter*;
>
> (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence;
>
> (5) whether the behavior to which it applies is already a crime;
>
> (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and
>
> (7) whether it appears excessive in relation to the alternative purpose assigned.

7

*Id.* at 99–100 (quotation marks omitted) (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)).

We find there is insufficient evidence "to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 99 (quotation marks, alteration, and citation omitted). "Although disgorgement . . . appl[ies] to conduct that may also be prosecuted under a criminal statute, and [] posses[es] some characteristics common to criminal laws, such as requiring scienter and effecting deterrence, . . . disgorgement . . . [has not] historically been viewed as punishment." *Palmisano*, 135 F.3d at 866 (citation omitted). Instead, money penalties have "been recognized as enforc[ea]ble by civil proceedings since the original revenue law of 1789." *Hudson*, 522 U.S. at 104 (citing *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938)); *see* Act of July 31, 1789, ch. 5, § 36, 1 Stat. 29, 47. Even more, disgorgement, which requires a person to dispense only with ill-gotten gains, does not involve an "affirmative disability or restraint" approaching that of imprisonment. *See id.* And it advances other nonpunitive purposes such as "ensuring that defendants do not profit from their illegal acts, encouraging investor confidence, increasing the efficiency of financial markets, and promoting stability of the securities industry." *Bank*, 965 F.3d at 300 (citations and quotation marks omitted).

Instead of challenging the consensus of authority from other circuits or attempting to classify disgorgement as a criminal punishment under *Hudson*, Jumper argues that the Supreme Court abrogated those cases in *Kokesh v. SEC* when it labeled disgorgement "a penalty." 581 U.S. 455, 463 (2020); *see* Appellant's Br. 15. Similar arguments were rejected by the Fourth and Sixth Circuits in *Bank* and *Dyer*. *See Bank*, 965 F.3d at 301; *Dyer*, 908 F.3d at 1003.

Because the Court concluded in *Kokesh* that disgorgement is a civil, not criminal, penalty, it does not disrupt our conclusion. Specifically, the Court held that "disgorgement constitutes a penalty within the meaning of [28 U.S.C.] § 2462." 581 U.S. at 463. Section 2462 defines the statute of limitations for "any *civil* fine, penalty, or forfeiture." 28 U.S.C. § 2462 (emphasis added). "Civil," in this context, modifies "fine," "penalty," and "forfeiture." *See* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) (Series-Qualifier Canon). So a "penalty within the meaning of § 2462" is a "civil penalty." *Cf. Gabelli v. SEC*, 568 U.S. 442, 444–45 (2013) (referring to § 2462 as "the general statute of limitations for civil penalty actions"). The Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson*, 522 U.S. at 99.

We hold that the District Court did not violate the Double Jeopardy Clause by issuing a criminal sentence to Jumper.

B

Relatedly, Jumper raises a collateral estoppel, or issue preclusion, claim. It is true that the Double Jeopardy Clause "embodies principles of collateral estoppel that can bar the relitigation of an issue actually decided in a defendant's favor by a valid and final judgment." *United States v. Merlino*, 310 F.3d 137, 141 (3d Cir. 2002) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). But Jumper does not point to the issue that was decided in his favor that he thinks should be barred from relitigation. On the contrary, the district court in Tennessee entered default judgment against Jumper, so it is not readily

apparent that *any* issues were actually litigated and decided in his favor.

We hold that the imposition of Jumper's criminal sentence is not barred by principles of collateral estoppel.

C

Finally, Jumper asserts that the District Court erred when it failed to grant a downward departure or variance based on his medical conditions. Specifically, he claims that the District Court improperly concluded that the BOP had medical facilities capable of treating his impairments. We hold that the District Court did not abuse its discretion because the sentence was procedurally sound and substantively reasonable.

When a defendant alleges procedural error, "we must ensure that the district court did not fail to calculate (or miscalculate) the Guidelines range; treat the Guidelines as mandatory; gloss over the § 3553(a) factors; choose a sentence based on a clearly erroneous fact; or inadequately explain the chosen sentence." *United States v. Brito*, 979 F.3d 185, 189 (3d Cir. 2020) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We presume that procedurally sound sentences within the Guidelines are reasonable. *United States v. Handerhan*, 739 F.3d 114, 119–20 (3d Cir. 2014). And we affirm unless we believe that "no reasonable court would have imposed that sentence for the reasons provided." *Brito*, 979 F.3d at 189 (citing *Tomko*, 562 F.3d at 568).

A district court may depart downward from the calculated Guidelines range for "[a]n extraordinary physical impairment." U.S. Sent'g Guidelines Manual § 5H1.4 (U.S. Sent'g Comm'n 2018). We lack jurisdiction to review a discretionary

10

denial of a downward departure "once we determine that the district court properly understood its authority to grant a departure." *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004). Because the District Court recognized that it could grant a downward departure for an extraordinary medical condition, we lack jurisdiction to review its denial of Jumper's request for such a departure.

A district court must "consider [] the need for the sentence imposed [] to provide the defendant with needed . . . medical care" before announcing a sentence. 18 U.S.C. § 3553(a)(2)(D). We require courts to explain their decision on the record so that we can satisfactorily review the sentence for reasonableness. *Rita v. United States*, 551 U.S. 338, 356–57 (2007). But "brevity is not error *per se*." *United States v. Jackson*, 467 F.3d 834, 842 (3d Cir. 2006). And we may affirm if the record makes clear that the court "listened to each argument[,] . . . considered the supporting evidence[,] . . . was fully aware of defendant's various physical ailments and imposed a sentence that [took] them into account." *Rita*, 551 U.S. at 358.

The record makes clear that the District Court adequately considered Jumper's medical needs before imposing the sentence and did not commit any procedural error. The Court reviewed Jumper's sentencing memorandum, which contained a detailed description of his medical needs as well as letters from his physicians and pastor. It heard from Jumper and his attorney, who specifically argued that the BOP would be unable to treat his client's medical needs. It discussed the relevant § 3553(a) factors. And it concluded, "it would appear [that the BOP] is equipped to provide consistent and adequate medical care for [Jumper]" before imposing a sentence that was reasonable, appropriate, and "not greater than necessary to meet sentencing objectives." App. 146a–47a.

11

We also find Jumper's sentence to be substantively reasonable. It was at the bottom of the Guidelines range, and the District Court noted Jumper's medical issues for the BOP and recommended that he be placed at a BOP medical facility or a prison with a medical facility.[2] There is no evidence in the record that would lead us to believe the BOP was not capable of treating Jumper's medical conditions.

Jumper submits, incorrectly, that the District Court was required to factually investigate whether the BOP was able to treat his impairments. He cites several cases, none of which stand for his proposition that it is an abuse of discretion to deny a sentence departure without factual evidence of the BOP's ability to deliver specific medical care.[3] To be sure, many

---

[2] Jumper alleges that he has not been placed in a BOP medical facility. The appropriate avenues for contesting the adequacy of BOP medical care are the prison's administrative grievance procedures and the Eighth Amendment, not a sentence appeal.

[3] Jumper cites two cases that stand for a logically dissimilar rule: it was permissible for the district court to disregard boilerplate language from the BOP regarding medical capabilities when granting a downward departure. *See United States v. Martin*, 363 F.3d 25, 50 (1st Cir. 2004); *United States v. Gee*, 226 F.3d 885, 902 (7th Cir. 2000). He cites two cases in which the appellate court vacated a sentence because the district court granted a departure without explaining how the defendant was entitled to one. *See United States v. Schein*, 31 F.3d 135, 138 (3d Cir. 1994); *United States v. Carey*, 895 F.2d 318, 320 (7th Cir. 1990). And he cites one case in which the appellate court disagreed with the district court's

inmates suffer from physical impairments. And Jumper has not explained how or why the BOP's typical medical care would be lacking in his case, or why it was unreasonable for the District Court to conclude that the BOP was capable of treating him.

We hold that the District Court did not abuse its discretion when it denied Jumper's requests for a downward departure and variance.

\*   \*   \*

For the reasons stated above, we will affirm the District Court.

---

departure denial because it disregarded U.S.S.G. § 5H1.4 entirely. *See United States v. Fisher*, 55 F.3d 481, 484–85 (10th Cir. 1995) (quoting district judge as explaining "I am not in the business of rehabilitation in this case, I am in the business of punishing the sale of L.S.D.").