**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-2814 and 23-2817
_____

UNITED STATES OF AMERICA

v.

TANYA JAYNENE STANGER,
                              Appellant in 23-2814

BRYCE RICHARD STANGER,
                              Appellant in 23-2817
_____

On Appeal from the United States District Court for the Middle District of Pennsylvania
(D.C. No. 4:21-cr-00264-001 through 002)
District Judge: Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2024

Before: RESTREPO, PHIPPS, and McKEE, *Circuit Judges*

(Filed: February 5, 2025)
_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

RESTREPO, *Circuit Judge*

Appellants Tanya Stanger and Bryce Stanger were convicted of conspiracy to distribute and possession with intent to distribute controlled substances—500 grams and more of a mixture and substance containing methamphetamine, and 400 grams and more of a mixture and substance containing fentanyl—in violation of 21 U.S.C. § 846.[1] The District Court denied their joint motion to suppress, and following their entry of conditional guilty pleas, sentenced both in accordance with the U.S. Sentencing Guidelines. The Stangers now appeal, arguing that the District Court erred by denying their suppression motion because the officer lacked reasonable suspicion to extend the traffic stop. Alternatively, they argue that the District Court erred in denying their requests for a downward sentencing variance. We disagree and will therefore affirm the judgments of conviction and sentence imposed by the District Court.

I.

A.

On August 25, 2021, Pennsylvania State Police Corporal Mark Conrad observed a Kia traveling 79 miles per hour on Interstate 80 with a posted speed limit of 70 miles per hour. Before stopping the vehicle, Cpl. Conrad made several observations: the car had heavily tinted windows; the car was clean with no personalization; the car's registration plate had a plastic cover on it, making it difficult to read; the car had a recent registration from San Ysidro, California, which borders Tijuana, Mexico; and the car had abruptly slowed to well-below the 70 mile-per-hour speed limit. Cpl. Conrad testified that, based on his training, each of these

---

[1] Any reference to "Appx" refers to the appendix filed by Tanya Stanger in Case No. 23-2814, which Mr. Stanger joins in and adopts pursuant to Fed. R. App. P. 28(i).

factors led him to suspect that the occupants of the vehicle, Tanya and Bryce Stanger, may be involved in criminal activity, particularly drug trafficking.

Cpl. Conrad then conducted a traffic stop, lasting around fifty-two minutes. Cpl. Conrad first questioned Ms. Stanger, who said they had left California and were on their way to New York to see a concert, but the concert had been cancelled and they did not have a hotel reservation. Cpl. Conrad also noted that Ms. Stanger appeared nervous and fidgety during the questioning. After running a standard criminal record check, Cpl. Conrad learned that Ms. Stanger had a history of drug offenses spanning a decade. Cpl. Conrad testified that it was at this point—approximately thirteen and a half minutes into the traffic stop—that he had reasonable suspicion that the Stangers were trafficking narcotics.

When Cpl. Conrad questioned Mr. Stanger separately, Mr. Stanger told him they were traveling to Hazleton, Pennsylvania, to pick up his grandmother. Cpl. Conrad testified that it was significant for Mr. Stanger to mention Hazleton because that area has become a hub for narcotics distribution. After running a criminal record check on Mr. Stanger, Cpl. Conrad learned that his record included multiple felony drug arrests.

Cpl. Conrad asked the Stangers if he could search the vehicle, and Mr. Stanger refused. Once backup arrived, Cpl. Conrad deployed a drug-detecting canine, who alerted to the presence of illegal narcotics in the car. After informing the Stangers that he would have to detain them and impound their vehicle while he waited for a search warrant, the Stangers consented to the vehicle search, occurring about fifty-two minutes into the traffic stop. The search yielded over eleven kilograms of 97% pure methamphetamine, and police later found over one kilogram of fentanyl during a subsequent search of the car. The Stangers were arrested.

3

The Stangers filed a joint motion to suppress the evidence obtained during the traffic stop, arguing that the traffic stop was unreasonably prolonged in terms of length and scope. The District Court denied the motion and found that the stop was lawful because Cpl. Conrad had reasonable suspicion to extend the Stangers' detention. The District Court credited Cpl. Conrad's observations, which formed the basis for reasonable suspicion.

C.

The Stangers both entered conditional guilty pleas for conspiracy to distribute and possess with intent to distribute controlled substances. At Ms. Stanger's sentencing, she requested a downward variance, noting her Guidelines range was based on pure methamphetamine and not a mixture containing methamphetamine. She argued that there is no longer a justification for sentencing individuals due to a higher purity of methamphetamine because most methamphetamine seized today is of high purity. The District Court disagreed, finding that "pure methamphetamine obviously increases the risk of an overdose and presents a greater risk to the public." Appx295. It reasoned that "the Sentencing Guidelines appropriately [ac]count for the increased risk of harm that arose as a result of the very pure methamphetamine that . . . Ms. Stanger[] was transporting." Appx295–96. After considering the § 3553(a) factors and other mitigating factors, the District Court imposed a sentence in the middle of the Guidelines range.

Mr. Stanger's sentencing hearing occurred the following day and proceeded similarly. The Court rejected his request for a downward variance for the same reasons given in Ms. Stangers' hearing. The Stangers' timely appealed.

## II.[2]

### A.

When reviewing the denial of a motion to suppress, we exercise plenary review over a district court's reasonable suspicion determination but review the factual findings for clear error. *United States v. Stewart*, 92 F.4th 461, 466 (3d Cir. 2024) (citing *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020)). When the district court denies the motion, we review the facts in the light most favorable to the government. *Id.*

During a lawful traffic stop, an officer's mission includes determining "whether to issue a traffic ticket" and making "ordinary inquiries incident to [the traffic] stop." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alteration in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). This can include checking for outstanding warrants and inspecting the vehicle's registration and insurance. *Garner*, 961 F.3d at 271. The Fourth Amendment also permits "an officer to conduct unrelated investigations that do not lengthen a roadside detention." *Id.* at 269. If the officer decides to take additional steps beyond the original purpose of the traffic stop, the officer must have already developed reasonable suspicion of criminal activity. *Rodriguez*, 575 U.S. at 355; *see also Garner*, 961 F.3d at 270 (finding the officer must have "an objectively reasonable and articulable suspicion that illegal activity had occurred or was occurring"). Reasonable suspicion does not require proof of wrongdoing by a preponderance of the evidence, but it does require more than a mere hunch. *Garner*, 961 F.3d at 271.

---

[2] The District Court had subject-matter jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have jurisdiction over the District Court's judgments of conviction under 28 U.S.C. § 1291 and the accompanying sentences under 18 U.S.C. § 3742(a).

Our inquiry is two-fold.  First, we must determine the *Rodriguez* moment, or "the moment when the stop was measurably extended." *Stewart*, 92 F.4th at 467. Second, we assess "whether the facts available to the officer up to that moment established reasonable suspicion of criminal activity." *Id.* The extension and subsequent seizure are lawful if reasonable suspicion existed at that time. *Id.*

We agree with the District Court that everything that occurred before the *Rodriguez* moment was within the scope of a normal traffic stop, and after that point, was supported by reasonable suspicion of criminal activity. Cpl. Conrad's initial questioning of Ms. Stanger qualified as an "ordinary inquir[y]" related to the stop. *Rodriguez*, 575 U.S. at 355. It was not until after their conversation—approximately thirteen and a half minutes into the stop—that the stop was arguably extended.

But by that point, Cpl. Conrad had already observed sufficient indicia that the Stangers could be involved in drug trafficking. We determine the existence of reasonable suspicion based on the totality of circumstances. *Garner*, 961 F.3d at 271. While "[i]t is possible for factors, although insufficient individually, to add up to reasonable suspicion . . . [,] we think it impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." *Karnes v. Skrutski*, 62 F.3d 485, 496 (3d Cir. 1995). Under that standard, several indicators—such as the car's tinted windows and covered license plate, that it was a salvage recently registered to an area bordering Mexico and the insurance was for a different car, as well as the Stangers' questionable travel plans—create the

6

basis for the officer's reasonable suspicion.[3]  Thus, we affirm the District Court's judgments of conviction and sentence.

B.

The Stangers alternatively appeal their sentences, arguing that the District Court abused its discretion by denying their requests for a downward variance. We disagree.

We review a sentence's procedural and substantive reasonableness for abuse of discretion. *United States v. Jumper*, 74 F.4th 107, 111 (3d Cir. 2023) (citing *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc)). Our review proceeds in two stages. *Tomko*, 562 F.3d at 567. First, we review the district court's decision for procedural error, which could include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Negroni*, 638 F.3d 434, 443 (3d Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If there is no procedural error, we then look to the substantive reasonableness of the decision, focusing on the totality of the circumstances. *Tomko*, 562 F.3d at 567. Reasonableness depends on "whether

---

[3] We note that several of the facts the Government cites in support of reasonable suspicion are wholly innocent, including that the Stangers were driving to New York City in a generic car that lacked personalization. Because "[t]here are limits . . . to how far police training and experience can go towards finding latent criminality in innocent acts," *Johnson v. Campbell*, 332 F.3d 199, 208 (3d Cir. 2003)," these factors alone or in combination add nothing to the reasonable suspicion calculation without more than appears on this record."  To hold otherwise, could potentially subject millions of innocent travelers to New York City to extended traffic stops. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (holding no reasonable suspicion where "circumstances describe a very large category of presumably innocent travelers.").  Judge Phipps does not join this footnote.

7

the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *Id.* at 568 (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)).

The District Court fulfilled its requirements with respect to procedural reasonableness. It imposed middle of the Guidelines sentences, considered motions for downward departures and requests for variances based on the purity of the methamphetamine, and addressed all relevant §355(a) factors. The Stangers did not dispute the 97% purity level of the methamphetamine they transported, and the District Court therefore committed no procedural error in calculating their Guideline ranges based on that level under Section 2D1.1.(c). We decline to reach any policy-based argument regarding sentencing disparities for mixed versus pure methamphetamine. Thus, the sentences were procedurally reasonable.

The sentences were also substantively reasonable. A sentencing court abuses its discretion only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [sentencing] court provided." *Tomko*, 562 F.3d at 568. "As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the [18 U.S.C.] § 3553(a) factors, we must affirm." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). The District Court thoroughly considered the seriousness of the offenses and the "increased risk of harm that arose as a result of the very pure methamphetamine" that the Stangers transported. Appx295–96. Thus, the District Court acted within its discretion.

IV.

For the foregoing reasons, we will affirm the judgments of conviction and sentence entered by the District Court.

8